# Sloan *v.* Frothingham.

*Bill in Equity for Foreclosure of Mortgage, Account, etc.*

1.   *Annuity to husband and wife during their joint lives, and to survivor for life, payable to husband "for their mutual benefit;" wife's interest in.* Where an annuity is created by deed, charged on lands, and secured by mortgage, in favor of husband and wife during their joint lives, and to the survivor for life, and is made payable to the husband "for their mutual benefit;" the husband does not take the entire interest during the joint lives of himself and wife, but he and his wife take by moieties; he receives and holds her portion as trustee for her, is liable to account to her for it, and can not make it his own, nor make an assignment or transfer which would affect her rights; and she has such an interest as entitles her to maintain a bill in equity to foreclose the mortgage, and to redeem from an older mortgage on the lands.

2.   *Bill by husband and wife, and dismissal thereof by husband.*—A bill filed in the names of husband and wife jointly, to enforce payment of an annuity charged on lands, and made payable to the husband for the mutual benefit of himself and his wife during their joint lives, is the bill of the husband alone; and a dismissal of the bill by him, on compromise with the defendant, does not prejudice the rights of the wife, nor bar her from maintaining another bill to enforce payment of her part of the annuity.

3.   *Sale under power in mortgage, by foreign administrator.*—A foreign administrator, who has not given bond and had his letters recorded here as required by statute (Code, §§ 2637–40), has no authority to execute a power of sale contained in a mortgage given to his intestate, as a domestic administrator may (*Ib.* § 2198); and a sale by him, under the power, neither cuts off the power of redemption, nor affects the right of a junior mortgagee to be let in to redeem.

4.   *Same; ratification by heirs and domestic administrator.*—Though such sale is unauthorized and irregular, yet, if it is ratified by the heirs, next of kin and domestic administrator, and the proceeds of sale are properly applied by the foreign administrator in the due course of administration, the purchaser will be regarded as an equitable assignee of the mortgage and secured debt, and will be subrogated to the rights of the heirs and the domestic administrator.

5.   *Sale under power in mortgage; effect as foreclosure; and ratification of irregular.*—A sale under a power contained in a mortgage, when valid and regular, is the equivalent of a decree of foreclosure in equity; and the same effect must be attributed to an irregular sale, when ratified by the parties in adverse interest. But a decree of foreclosure only binds the parties to the suit, and does not affect the rights of other persons; and the ratification of an irregular or unauthorized sale, by some of the parties in adverse interest, can not be allowed to prejudice the rights of the others.

6.   *Ratification of unauthorized sale.*—It is a plain principle of right and justice, that where there is an unauthorized sale of property, real or personal, the owner can not take and hold the purchase-money, and yet reclaim the property; if, with knowledge of the facts, he elects to take the benefits of the sale, he can not afterwards repudiate it, to the injury

[Sloan v. Frothingham.]

of the purchaser; and this principle applies equally to void and voidable sales.

7. *Mortgagee's liability for rents and profits.*—A mortgagee, entering into possession before a foreclosure, under a sale which is either void or voidable, is accountable for the rents and profits actually received, and such as he might have received by the exercise of reasonable diligence.

8. *Removal of husband as wife's trustee.*—Where the husband has precluded himself from asserting his rights as trustee for his wife, and has abandoned her, taking up his permanent residence in a foreign country, a court of equity will remove him, at the instance of the wife, seeking to enforce her rights, and appoint another trustee for her.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed on the 9th August, 1879, by Maria L. Sloan, the wife of Edward A. Sloan, against her said husband, James H. Frothingham, and several other persons; and sought to set aside a sale of certain real estate in the city of Montgomery, known as the "Belshaw corner," which had been made under a power contained in a mortgage executed by Robert R. Belshaw and James W. Powell to Charles B. Tatham, of New York; to have the property sold, in foreclosure and satisfaction of a junior mortgage, given by said Belshaw to the complainant and her said husband; also, an account of the rents and profits of the property while in the possession of the said Frothingham, the removal of said Edward A. Sloan as trustee for the complainant, and general relief.

The mortgage which the bill sought to have foreclosed, and a copy of which was made an exhibit, was dated March 7th, 1873, and recited as its consideration the compromise and settlement of a controversy which had existed between the complainant and said Robert R. Belshaw, respecting their interests in the said property; by the terms of which settlement, as reduced to writing and signed by both parties, the complainant and her husband conveyed to said Belshaw her interest in the property, and Belshaw agreed to charge it with the payment of an annuity in their favor. The stipulations as to the annuity were thus expressed in the instrument: "The parties of the second part [Belshaw and wife] covenant and agree to charge the aforesaid real property, for the payment well and truly to be made to the parties of the first part [Sloan and wife], with the sum of nine hundred dollars annually, from the first day of October, 1872; such annual payments being payable in equal semi-annual payments,—the first being payable October 1st, 1872, and the second on the 1st April, 1873, and on each succeeding first day of October and April, and so payable, in equal semi-annual payments, during their joint lives; and in the event of the death of the said Edward A. Sloan, before the death of said Maria L. Sloan, his wife, then and in that event

for the payment to the said Maria L. of the sum of nine hundred dollars, payable semi-annuallly as aforesaid, during her life; but, should the said Edward A. survive his said wife, then for the payment to him, the said Edward A., of five hundred dollars annually during his life, in semi-annual payments as aforesaid; which payments, so herein provided to be made to the said Edward A. and Maria L. Sloan, shall, during their joint lives, be made to the said Edward, or his duly authorized agent thereunto appointed, for the mutual benefit of the said parties of the first part, as herein provided and contemplated; and in the event that the said Edward A. survive the said Maria L., then the sum herein provided to be paid to him shall be paid to him, the said Edward A.; and in the event that the said Maria L. shall survive the said Edward A., then the sum herein provided to be paid to her, in the event of survivorship, shall be paid to her. Which said charge shall be created by the said parties of the second part executing a mortgage on said real property, in compliance with the terms of this instrument," &c. The mortgage was given to secure the payment of this annuity as stipulated, and contained a power of sale on default.

The mortgage to Sloan and wife was, by its terms, made subject and subordinate to another mortgage already existing on the property, a copy of which was also made an exhibit to the bill; this being the mortgage under which the property was sold, and under which the defendant Frothingham claimed and held. This former mortgage was executed by said Robert R. Belshaw and James W. Powell and wife, to said Charles B. Tatham, of New York, to secure the payment of five promissory notes, falling due one, two, three, four and five years after date respectively, and amounting to about $13,000; and was dated April 30th, 1860. "After the execution of said mortgage," as the bill alleged, "and before the sale had under it as hereinafter stated, said Powell transferred and conveyed to complainant and said R. R. Belshaw, by proper deed of conveyance, all his right, title and interest in said property upon *his* promise and agreement to pay said mortgage." Said mortgage was, as the bill further alleged, "on the 28th May, 1860, duly transferred, conveyed, and assigned in writing, by apt words of conveyance, by said Charles B. Tatham, to William H. Cary, since deceased, who departed this life, in the State of New York, in February, 1861." Letters of administration on said Cary's estate were granted, in New York, to Mrs. Maria Cary, his widow, and Isaac H. Frothingham; but they never had their letters of administration recorded here, or gave bond, as required by the statutes of Alabama.—Code, §§ 2637-40. On the 1st January, 1873, said New York administrators, "claiming and professing to act under said power of sale contained in

said mortgage," sold the property, and it was bid off in the name of said James H. Frothingham as the purchaser. The administrators were not present at the sale, which was conducted by J. S. Winter as their agent and attorney, and the property was bid off by him, or at his instance, in the name of said James H. Frothingham, to whom a deed was afterwards executed by the administrators. Said Frothingham was put in possession of the property under his purchase, and continued in possession until July, 1879, when he sold and conveyed to James A. Farley and Moses Brothers, a partnership doing business in the city of Montgomery.

The bill alleged, also, that said Edward A. Sloan, on the 3d August, 1878, "filed a bill in this court similar to this bill, but, although he was trustee for complainant as herein shown, he filed said bill in his own name, making himself the only plaintiff, and your oratrix one of the defendants;" that he afterwards compromised and settled said suit, in consideration of money paid him by some of the defendants, dismissed the bill, and transferred all his right and interest in the annuity and mortgage to said James H. Frothingham; that he had abandoned the complainant, had not lived with her for several years, and contemplated a return to England, his native country, intending to take up his permanent residence there. It was alleged, also, that the payments made on the debt to Tatham, and the rents and profits of the property while in the possession of the several defendants, were sufficient to pay the debt secured by the mortgage to Tatham. James H. Frothingham, Robert R. Belshaw and wife, Charles Tatham, Edward A. Sloan, James A. Farley, the several partners composing the firm of Moses Brothers, Mrs. Maria Cary and Isaac Frothingham, individually and as administrators of the estate of said William H. Cary, were made defendants to the bill; the prayer of which was, that the sale under the mortgage to Tatham, and the conveyances to the subsequent purchasers, be set aside; that an account be taken of the rents and profits of the property while in the possession of the several defendants since the sale under the mortgage, and the amount be applied to the payment of any balance remaining due and unpaid on said mortgage debt; that the complainant's mortgage be foreclosed, the property sold, and the proceeds applied in satisfaction of the amount due her; that said Edward A. Sloan "be removed from the trusteeship of said property in this bill mentioned, and that complainant be permitted, by the decree of this court, to own, control, and dispose of said property as a *femme sole ;*" and the general prayer, for other and further relief, was added.

A demurrer to the bill was filed by Edward A. Sloan, which the chancellor overruled; but he sustained a demurrer filed by

the other defendants jointly. On appeal to this court, by the complainant, the chancellor's decree was reversed, and the cause was remanded, as shown by the former report of the case. *Sloan v. Frothingham*, 65 Ala. 593–99.

The bill was amended, after the remandment of the cause, by alleging that said New York administrators, prior to said sale under the power in the mortgage, had received partial payments from Belshaw on the mortgage debt, and were placed in possession of the premises by Belshaw, and received the rents for a long space of time; that they also received, of the purchase-money bid at the sale, the sum of $17,244.90, being the whole amount bid except $755, which was paid to Belshaw as the excess above the amount due on the mortgage debt; that these several sums were duly used in the course of administration by the New York administrators, and paid over and distributed among the heirs and distributees who resided there, and who were all of lawful age; that there were no heirs or distributees who resided in Alabama, and no creditors resident here; and that letters of administration on said Cary's estate had been duly granted by the Probate Court of Montgomery, since the filing of the original bill, to S. M. Levin, who was made a defendant. It was alleged, also, that said E. A. Sloan had carried out his intention of leaving the country, had deserted the complainant, and had taken up his permanent residence in England.

A cross-bill was filed by Robert R. Belshaw, alleging that said New York administrators had received, in addition to the $17,244.90 of the purchase-money bid at the sale, large partial payments made by him, and the rents and profits of the property for a long space of time, and had duly accounted for all these sums to the distributees in New York; that he received from said administrators, or from their agent and attorney who conducted the sale, the sum of $755.10, as the balance estimated to be due him after satisfying the mortgage, on the assurance of said agent and attorney that the sale was regular, legal and valid, and with the definite understanding that the purchase-money was to be applied to the payment and satisfaction of said mortgage debt; whereas, as he had learned within the last six months, said sale was made by said administrators without any authority, said mortgage was still uncancelled and unsatisfied, and the secured notes were still outstanding, still a subsisting liability against him, and an incumbrance on the mortgaged property. The prayer of his cross-bill was, "that said sale or pretended sale, made on or about the 26th May, 1873, under said power of sale contained in the said mortgage to Tatham, be set aside and annulled; that an account may be taken, under the direction of the court, of what may be due by your orator on said mortgage; that your orator may be credited, on such accounting, with the

38

[Sloan v. Frothingham.]

rents and profits arising from said mortgaged property since January 1st, 1873, or which should have been received if the same had been properly managed; and if, on said accounting, nothing is found due on said mortgage, that the same may then be ordered to be given up and cancelled; and if any balance is found due to your orator on such accounting, respondents may be decreed to pay the same. Or, if anything is found due on said mortgage, or on any other accounts growing out of the matters and things in this bill set forth, then your orator offers to pay the same, and prays that, when so paid, said mortgage may be ordered to be given up and cancelled;" and for other and further relief, under the general prayer.

By written agreement of counsel, filed of record in the cause, the following facts were admitted: "The transfer and conveyance by Powell and wife was to Robert R. Belshaw alone, and not to him and Mrs. Maria L. Sloan. The notes and mortgage to Tatham were regularly transferred and conveyed to W. H. Cary in his life-time, and to his heirs, executors, and assigns, by said Tatham. It is admitted that R. R. Belshaw did not have actual notice that no letters of administration on Cary's estate had been granted in Alabama to said Isaac H. Frothingham and Maria Cary, or that they had not had their New York letters of administration recorded in Alabama, and had not given bond here; but said Belshaw lived in the city of Montgomery, within a few hundred yards of the court-house, and had opportunity to find out before the sale of said mortgaged premises on 26th May, 1873; and said Belshaw was present at said sale. J. S. Winter, who acted as the attorney for said New York administrators at said sale, stated to said Belshaw, at and before the sale, that they had the right, under the power of sale contained in the mortgage to Tatham, to make the sale which was made on the 26th May, 1873. The sale was advertised to be made by said Frothingham and Mrs. Cary, as the administrators of W. H. Cary, under the power of sale contained in the mortgage to said Tatham. Said Winter had been the attorney of Belshaw, on various occasions, in 1870, '71, and '72, but was not his attorney at said sale on the 26th May, 1873, being then the attorney of said New York administrators; and in asking for a postponement of the sale, which had been advertised as early as March, 1873, said Belshaw was represented by J. Gindrat Winter and Jno. Gano Winter, who were never employed to contest said sale, nor advised with as to the validity of said sale. At the time of said sale, Isaac H. Frothingham was absent in Europe, and did not return until late in the summer, or early in the fall; and after his return, he gave his written approval of the sale, and, on the 15th November, 1873, he and Mrs. Cary executed and delivered to said James H. Frothingham, as

the purchaser at said sale, a conveyance of said premises, as more fully stated in the answer of said Frothingham. Robert R. Belshaw received the rents and profits of the mortgaged premises, up to the sale on 26th May, 1873. At and before said sale, said Belshaw and Mrs. Sloan were occupying a part of the mortgaged premises, and they continued to occupy them for some time afterwards, free of rent, Mrs. Sloan so continuing until October 1st, 1875. Of the amount bid at the sale, $755.10 was paid to said R. R. Belshaw, and the balance, $17,244.90, was paid to said Isaac Frothingham and Mrs. Cary as administrators. The heirs and distributees of W. H. Cary, with full knowledge of the facts, ratified said sale of May 26th, 1873; and the money realized from said sale was distributed to them, as assets of the estate of said W. H. Cary, by said New York administrators; and the two payments made to said administrators, in 1867 and 1868, by said Belshaw, were likewise distributed amongst the heirs and distributees, with full knowledge of the source whence said moneys arose. Said E. A. Sloan and his wife both were living in Montgomery on the 26th May, 1873, as they had been for several years before; and they both knew of said sale when it occurred, and that James H. Frothingham was the purchaser at said sale. Edward A. Sloan conveyed to Moses Brothers, and not to James H. Frothingham. At the time said Sloan filed his bill, and at the time the decree was rendered thereon, he and his wife, the said Maria L., were living apart; and since the filing of the bill in this case, said Sloan has gone to Europe, with the intention of remaining, and he and the said Maria L. have lived separate since they separated, as set forth in the bill. Prior to the conveyance by said E. A. Sloan to Moses Brothers, the latter had arranged with Farley for the purchase of the property from James H. Frothingham. This agreement applies only to the hearing on the equities of the parties, and shall not interfere with any reference which may be ordered by the chancellor, if he so decrees."

On final hearing, on pleadings and proof, the chancellor dismissed the original bill, at the costs of the complainant or her next friend, and also dismissed the cross-bill of Belshaw, at his costs, but without filing any written opinion. From this decree Mrs. Sloan and Belshaw each appeals, and each assigns errors in this court; Mrs. Sloan assigning the dismissal of her bill, and Belshaw the dismissal of his cross-bill.

JNO. GINDRAT WINTER, with whom were CLOPTON, HERBERT & CHAMBERS, for Mrs. Sloan, one of the appellants.—1. The words "for the mutual benefit of the two," as used in the instrument creating the annuity, do not exclude the husband's marital rights as to the interest of the wife in the annuity and

[Sloan v. Frothingham.]

the mortgage security; and his marital rights not being excluded, the wife's estate is held under the statute.—*Brevard v. Jones*, 50 Ala. 221; *Conner v. Williams*, 57 Ala. 131; *Hooks v. Brewer*, 62 Ala. 260; *Miller v. Voss, Taylor & Co.*, 62 Ala. 122; *Mitchell v. Gates*, 23 Ala. 483; *Williamson v. Mason*, 23 Ala. 488; *Johnson v. Johnson*, 32 Ala. 637; *Geyer v. Br. Bank of Mobile*, 21 Ala. 414; *Lewis v. Eldridge*, 38 Ala. 17; *Huckabee's Adm'r v. Andrews*, 34 Ala. 646. But, however strong the words may be, as evidencing an intention to exclude the husband's marital rights, they would be treated as surplusage in a joint conveyance to husband and wife.—*Pollard v. Merrill*, 15 Ala. 729; *Walthall v. Goree*, 36 Ala. 729. At common law, such a conveyance would create a tenancy by entireties.—Ewell's Lead. Cas. on Infancy and Coverture, 488 *et seq.* It is unnecessary to consider what effect a sale of such an estate by the husband would have on the wife's interest; since the statutes have done away with such estates, and husband and wife are now made tenants in common as to such estates.— *Walthall v. Goree*, 36 Ala. 729.

2. It matters not, for the purposes of this suit, whether Mrs. Sloan's estate is equitable or statutory. She is entitled to protection against the marital rights of the husband; and if not protected by the instrument creating the estate, then the statute applies.—*Brevard v. Jones*, 50 Ala. 221; cases cited in 2 Brick. Digest, 91, § 272. If the instrument excludes the marital rights, she is protected, and the statute has no application.—Same authorities. Hence, the transfer of his interest by E. A. Sloan to Moses Brothers can not affect the interest of his wife, the complainant; and the dismissal of his bill can not prejudice her rights in this case.

3. The attempted foreclosure of the mortgage by the New York administrators, under the power of sale contained therein, was and is absolutely void as to Mrs. Sloan.—*Sloan v. Frothingham*, 65 Ala. 593. No act ratifying said sale, in which she did not participate, would bind her.—*Cook v. Tullis*, 18 Ala. 338; *Wood v. McCain*, 7 Ala. 806; *Foster v. Hogart*, 12 Q. B. 167; *Gardner v. Gardner*, 4 Illinois, 296; *Whitacre v. Fuller*, 5 Maine, 517; 1 Jones on Mortgages, § 732. A foreclosure in equity does not bind incumbrancers who were not parties to the proceedings.—2 Jones on Mortgages, §§ 1075, 1395; *Judson v. Emanuel*, 1 Ala. 601; *Cullum v. Batre*, 2 Ala. 420; *Br. Bank v. Taylor*, 10 Ala. 70; *Downs v. Hopkins, Allen & Co.*, 65 Ala. 510; *Kilgour v. Wood*, 64 Illinois, 346.

4. The purchaser at the sale having paid the purchase-money to the New York administrators, and they having duly applied the same by proper distribution among the heirs of their decedent, who were all of lawful age, and there being no creditors of

[Sloan v. Frothingham.]

the estate in Alabama; these facts operated as an equitable as-signment of the mortgage and secured debt to said purchaser, but not as a confirmation of the sale on the part of this com-plainant.—*Robertson v. Ryan*, 25 N. Y. 320; *Brown v. Smith*, 16 Mass. 108; *Brobst v. Brock*, 10 Wallace, 519; *Gilbert v. Cooley*, Walker's Ch. 494; *Olmsted v. Elder*, 2 Sandf. N. Y. 325; *Moore v. Cord*, 14 Wisc. 213; *Stark v. Brown*, 12 Wisc. 573; *Johnson v. Robinson*, 34 Md. 167; *Jackson v. Bowen*, 7 Conn. 1; *Niles v. Ransford*, 1 Mich. 343; *Muir v. Berk-shire*, 52 Indiana, 149; *Jones v. Mack*, 53 Mo. 147; *Russell v. Whitely*, 59 Mo. 196; *Cook v. Parham*, 63 Ala. 461; *Hatchett v. Berney*, 65 Ala. 39.

5. The purchaser at said sale, being only an assignee of the older mortgage, and having taken possession of the mortgaged property, became a mortgagee in possession without foreclosure, and as such liable to account to complainant, as junior mort-gagee, for the rents and profits of the property, to be applied in satisfaction of the older mortgage.—Jones on Mortgages, §§ 1112, 1118; *Hogan v. Stone*, 1 Ala. 496; *Morrow v. Tur-ney's Adm'r*, 35 Ala. 131; *Powell v. Williams*, 14 Ala. 476; *Toomer v. Randolph*, 60 Ala. 355; *Lovelace v. Webb*, 26 Ala. 271.

6. If the acceptance by the mortgagor of the surplus of the purchase-money at said sale, operating as a ratification, passed his equity of redemption to the purchaser, said purchaser be-came, after payment of the first mortgage, the owner of the en-tire estate, subject only to the complainant's mortgage. Ordi-narily, when the two estates become united in one and the same person, the mortgage is merged; but equity will prevent a merger, to protect the owner against an intervening incum-brance.—Jones on Mortgages, § 848. Hence, the older mort-gage was not merged, and the owner's possession must be re-ferred to it, and not to the interest he acquired from the mort-gagor; otherwise, this rule preventing the merger would be extended further than the principle requires, its purpose being to secure the payment of the mortgage debt before a second or intervening incumbrancer can subject the property; for "pay-ment of the mortgage debt is the full measure of the right of the mortgagee in a court of equity."—*Downs v. Hopkins, Al-len & Co.*, 65 Ala. 510. Hence, appellees can not say that they are not liable for rents, because they hold under the mortgagor, who was not liable for rents. But this is not an open question, since the universal doctrine is, that a first mortgagee in posses-sion, although he has acquired the interest of the mortgagor, is liable to account at the instance of a second mortgagee.—*Ten Eyck v. Casad*, 15 Iowa, 524; *Johnson v. Harmon*, 19 Iowa, 60; *Barrett v. Blackmar*, 47 Iowa, 565; *Shaw v. Hoadley*, 8 Blackf. Ind. 165; *Murdock v. Ford*, 17 Indiana, 52; *Strange*

[Sloan v. Frothingham.]

v. *Allen*, 44 Illinois, 433 ; *Parker v. Childs*, 25 N. J. Eq. 41 ;
*Swift v. Edson*, 5 Conn. 531 ; *Harrison v. Wyse*, 24 Conn. 1 ;
*Cooper v. Martin*, 1 Dana, 23 ; *Haines v. Beach*, 3 John. Ch.
459 ; *Walsh v. Insurance Co.*, 13 Abb. Pr. 33.

GORDON MACDONALD, for R. R. Belshaw, one of the appellants.—1.  The first point raised on the demurrer is settled by
the decisons of this court in *Hatchett v. Berney*, 65 Ala. 39 ;
and *Sloan v. Frothingham*, 65 Ala. 593.

2.  Admitting that Belshaw is chargeable with notice of the
illegality of the sale by the New York administrators, which
this court has declared *void* (*Sloan v. Frothingham*, 65 Ala. 593),
it is contrary to reason and justice, and against the highest authority, both English and American, State and Federal, to hold
that such *void* sale, or any other *void* act, is capable of confirmation.—Bouv. Law Dic., tit. *Confirmation*, and authorities
there cited ; Bishop on Contracts, 707 ; *Pearsall v. Chaplin*,
44 Penn. 9 ; *McCracken v. San Francisco*, 16 Cal. 591 ; *Candee
v. Burke*, 1 Hun, N. Y. 546 ; *Edmunson v. Montague*, 14 Ala.
370 ; *Savings Bank v. Dunklin*, 54 Ala. 471 ; *City of Eufaula
v. McNab*, 67 Ala. 588 ; *Chambers v. Falkner*, 65 Ala. 488 ;
*Cook v. Tullis*, 18 Wallace, 332 ; *Joiner v. Palmer*, 78 N. C.
196 ; *Pettit v. Pettit*, 32 Ala. 288 ; *Carrington v. Culler*,
2 Stew. 175.  The acceptance of money under a *void* sale can
not estop the party accepting it.  " *Confirmatio est nulla, ubi
donum precedens est invalidum ; et ubi donatio nulla est, nec
valebit confirmatio.*"  And see *Candee v. Burke*, and *Chambers
v. Falkner*, *supra*.

3.  Whenever it is necessary to make title to lands through
the official acts of an executor or administrator, it must be the
act of an executor or administrator deriving authority from the
*lex rei sitœ*, or recognized by that law.  At the time of Belshaw's supposed ratification, there could have been no party
with whom he could deal, either by direct contract, or by the
implied contract of ratification.—*Kerr v. Moore*, 7 Wheat. 552 ;
*Cutler v. Davenport*, 1 Pick. 81 ; *Hutchins v. State Bank*,
12 Metc. 424.

4.  The proof shows that the money was accepted by Belshaw
upon the representation to him by the attorney of the foreign
administrators, who was also his attorney, that said foreign administrators were in fact entitled to it, and were the proper
parties to receive the money.  This was simply a mistake of
fact.  Money paid under a mistake of fact, though paid voluntarily, may be recovered back, even without a previous demand;
and merely having the means of knowledge is not sufficient to
prevent a recovery.  Belshaw having accepted the money under these representations by the attorney of the New York ad-

[Sloan v. Frothingham.]

ministrators, who were in fact the sellers, a court of equity will set aside the sale, whether the representation was the result of fraud or mistake.—*Doggett v. Emerson*, 3 Story, C. C. 700; *Baines v. Barnes*, 64 Ala. 383; *Daniel v. Mitchell*, 1 Story, C. C. 172; *Warner v. Daniels*, 1 Wood. & M. 107; *Mason v. Crosby*, 2 *Ib.* 342; *Smith v. Babcock*, 2 *Ib.* 246; *James v. State Bank*, 17 Ala. 69.

Thos. H. Watts, and Troy & Tompkins, *contra.*—1. The complainant's interest in the annuity is not an equitable separate estate, since there are no words in the instrument creating it which exclude the husband's marital rights: on the contrary, the instrument provides that the money shall be paid to the husband for the *joint* use and benefit of him and his wife, and thereby excludes the idea of any separate estate or interest in the wife.—*Bender v. Reynolds*, 12 Ala. 146; *Moss v. McCall*, 12 Ala. 630; *Pollard v. Merrill & Eximer*, 15 Ala. 169; *Mitchell v. Gates*, 23 Ala. 438; *Williamson v. Mason*, 23 Ala. 488; *Johnson v. Johnson*, 32 Ala. 637; *Lamb v. Wragg & Stewart*, 8 Porter, 73.

2. Nor is her interest a statutory estate. Such an estate is created by the law, and does not arise from the contracts of the parties; and the law has imposed upon it certain liabilities, from which it can not be freed by the acts of the parties, and has thrown around it certain restrictions and safeguards, which can not be disregarded or destroyed by the parties. The character of this estate, the nature of the liabilities to which it may be subjected, the restrictions imposed upon its alienation, and the respective interests of husband and wife in it and to it, during their joint lives, and on the death of either, are carefully defined and declared by the statute; and these provisions have been the subject of numerous adjudications by this court.—*Short v. Battle*, 52 Ala. 466; *Durden v. McWilliams*, 31 Ala. 438; *Lee v. Campbell*, 61 Ala. 12; *Lee v. Tanenbaum*, 62 Ala. 501; *O'Conner v. Chamberlain*, 59 Ala. 431; *Cauly v. Blue*, 62 Ala. 77; *Gilbert v. Dupree*, 63 Ala. 331; *Rogers v. Boyd*, 33 Ala. 175; *Eskridge v. Ditmars*, 51 Ala. 245; *Lobman v. Kennedy*, 51 Ala. 163. An attempt to apply these statutory provisions, as construed in these and other decisions of this court, to the interest which Mrs. Sloan takes in this annuity would be futile. The wife has no power to charge it at all, while the husband's power of disposition is unlimited and unrestricted, except that it must be used for the *mutual* benefit of himself and his wife. He may buy a pleasure carriage with it, or a piano, or any other article of comfort, pleasure, or convenience, which would not be considered necessaries under the statute; or he might spend the entire amount each year in carrying on farm-

ing operations for their joint benefit. The instrument does not limit the husband's power to mortgage the annuity, or to transfer or assign it, during the joint lives of himself and wife; and on his death intestate, the wife's interest in the annuity would not be estimated in ascertaining her distributive share of his estate. All these incidents clearly distinguish this from a statutory estate.

3. Being neither a statutory estate, nor an equitable separate estate, it necessarily follows that the common law must govern it; and at common law, the entire interest in an annuity so held vested absolutely in the husband, except as to the contingent interest of the wife dependent on her survivorship.— *Walthall v. Goree*, 36 Ala. 736; Tyler on Infancy and Coverture, 385; *Ames v. Norman*, 4 Sneed, 683; Bishop on Married Women, vol. 1, § 131.

4. Mrs. Sloan, then, during the life of her husband, has no interest in this annuity, for which she can maintain any suit, either at law or in equity. If she ever had any right or interest, she is barred by the decree dismissing her husband's bill, which is conclusive on her; and the transfer by her husband to Moses Brothers conveyed the entire interest.—*Aurand v. Aurand*, 21 Penn. St. 343; 4 Wait's Actions and Defenses, p. 570.

5. But, whatever may be Mrs. Sloan's rights or interest in the annuity, she is entitled to no relief, under the pleadings and admitted facts, as against the defendants who now hold and claim the mortgaged property. Although the sale by the New York administrators was made without authority of law, and was void for some purposes, it was capable of ratification.—Story on Agency, §§ 249–40; *Lamkin v. Reese*, 7 Ala. 70; *Handy v. Noonan*, 51 Miss. 166; *Forsythe v. Day*, 46 Maine, 176; *Maple v. Kussart*, 53 Penn. St. 348. A sale under the mortgage by Cary's heirs, the parties beneficially interested, would have cut off the equity of redemption, as effectually as a decree of foreclosure in equity.—*Childress v. Monette*, 54 Ala. 317; *McGuire v. Van Pelt*, 55 Ala. 344. The administrators were the mere trustees or agents of the heirs and distributees of the estate; and there being no debts against the estate, and the money having been paid over to the parties entitled to receive it, a domestic administrator would be enjoined from the assertion of his legal rights.—*Fretwell v. McLemore*, 52 Ala. 124; *Owens v. Childs*, 58 Ala. 113. When parties voluntarily do what a court of equity would compel them to do, the court will uphold and sanction it.— *Wilson v. Sheppard*, 28 Ala. 623.

6. Belshaw received the surplus of the proceeds of sale after satisfying the Tatham mortgage, with full knowledge of the facts; and this amounts to a ratification of the sale by him.

[Sloan v. Frothingham.]

*Maple v. Kussatt,* 53 Penn. St. 348 ; *Kyle v. Town of Yellowhead,* 80 Illinois, 208 ; *Snow v. Walker,* 43 Texas, 154 ; *Cady v. Owen,* 34 Vermont, 598 ; *Handy v. Noonan,* 51 Miss. 166. If there was any mistake, it was as to a matter of law, and does not authorize equitable relief.—*Townsend v. Cowles,* 31 Ala. 435. Neither his allegations nor his proof entitles him to any relief on the ground of fraud or mistake.—*Duckworth v. Duckworth,* 35 Ala. 70 ; *Flewellen v. Crane,* 58 Ala. 627 ; *Willingham v. Harrell,* 36 Ala. 583, *Bliss v. Anderson,* 31 Ala. 612 ; *Dill v. Camp,* 22 Ala. 249 ; Kerr on Fraud and Mistake, 298–9.

7. James H. Frothingham entered into possession under the mortgagor, and not as mortgagee ; and neither he nor the subsequent purchasers from him can be charged with rents and profits, as mortgagees in possession, at the suit of junior mortgagees. Neither the mortgagor, nor assignee of the equity of redemption, can be held accountable for rents, until a receiver has been appointed, or his right has been in some other manner intercepted.—*Howell v. Ripley,* 10 Paige, 43 ; *Scott v. Ware,* 64 Ala. 174 ; *Coker v. Pearsall,* 6 Ala. 542 ; *Hutchinson v. Dearing,* 20 Ala. 798 ; *Fry v. Br. Bank,* 23 Ala. 770 ; *Walker v. King,* 44 Vermont, 601 ; *Cook v. Parham,* 63 Ala. 456; *Renard v. Brown,* 7 Nebr. 449 ; 2 Jones on Mortgages, §§ 1070, 1118 ; *Hooper v. Wilson,* 12 Vermont, 695 ; *Mayo v. Fletcher,* 14 Pick. 525 ; *Bank v. Reid,* 8 Pick. 549.

BRICKELL, C. J.—The first question presented in the argument of counsel is, whether Mrs. Sloan has such an interest in the annuity payable to herself and husband during their joint lives, as entitles her to maintain a bill for the foreclosure of the mortgage given to secure its payment, and to redeem from the senior mortgage upon the same premises.

By the common law, obligations or promises for the payment of money to the wife, or to husband and wife jointly, made during coverture, on the death of the husband without having reduced them to possession, or without having done some act in disaffirmance of the right of the wife, survived to her, and she held them as against the claim of his personal representative.—1 Bright on Hus. & Wife, 38 ; 1 Bishop on Married Women, §§ 87–8. A note for the payment of money, payable to the husband and wife, secured by mortgage, on the death of the husband survived to the wife.—*Draper v. Jackson,* 16 Mass. 480. A bond given to husband and wife, for their maintenance during each of their lives, survives to the wife. And if in his own name the husband had taken a mortgage to secure the payment of the bond, on his death, without having disaffirmed the right of the wife, the mortgage enured to her

[Sloan v. Frothingham.]

benefit.—*Pike v. Collins*, 33 Maine, 38.   Or, if, suing in their joint names, the husband recovered judgment on such bond, after his death, the wife could by *scire facias* revive and enforce it.—*Schoonmaker v. Elmendorf*, 10 Johns. 48.   In all such obligations, or promises, the wife had a distinct, legal and beneficial interest, of which she could be divested only by some act of the husband in disaffirmance of it, and of appropriation to his exclusive use.—*Boret v. Spelman*, 4 Comst. 284.   If the intervention of a court of equity was necessary to aid the husband, or his assignee, in reducing them to possession, the court would enforce the equity of the wife to a settlement, making for her the same provision which would have been made, if they had been *choses* in action accruing to her before marriage.—2 Story's Eq. §§ 1404–08.   The only distinction, of substance, recognized between such *choses* in action, accruing to the wife after marriage, and *choses* in action accruing to her before marriage, was in the mode of suing at law for their recovery.   In all actions upon the ante-nuptial *choses* of the wife, husband and wife must have joined; and the suit was essentially the suit of the wife, "for the thing in controversy was hers."   In suing upon her post-nuptial *choses* of this character, the husband could sue alone, or, at his option, join the wife; and if she was joined, her rights were precisely the same as her rights to her ante-nuptial *choses*.—1 Bishop on Married Women, § 92.   The whole doctrine grew out of the common-law theory of the unity of the marriage relation—the incorporation of the legal existence of the wife into that of the husband, and her consequent incapacity to take and hold property.   From that incapacity resulted the principle, that the husband was entitled to take and hold all chattels of which she was possessed at the time of marriage, or subsequently coming to her possession; and the right to make his own all her *choses* in action, by reducing them to possession.   There was, however, in the wife a distinct, legal and beneficial interest, recognized by the common law, until it was defeated by the act of the husband.—*Richardson v. Daggett*, 4 Vermont, 334.

The constitution and the statutes have changed and superseded wholly the theory and principles of the common law, so far as they defined and established the relation of the husband to the property and rights of property of the wife; creating a new system, variant in its policy, and in all its provisions. The wife is recognized as a distinct legal person, with as full capacity to take and hold property and rights of property, as if she had not entered into the matrimonial union.   In this respect, her legal existence is not lost, or merged in that of the husband.— *Walthall v. Goree*, 36 Ala. 728; *Stone v. Gazzam*, 46 Ala. 274.   The words of the statute are as broad and com-

prehensive as could have been employed. "All property of
the wife, held by her previous to. the marriage, or which she
may become entitled to after the marriage, in any manner, is
the separate estate of the wife." The term "property," as
employed in the statute, includes every right which the wife
can have in and to things real or. personal, things in possession
or in action. In *Soulard v. United States*, 4 Peters, 511, it
was said by C. J. MARSHALL, that as applied to lands, the term
"comprehends every species of title, inchoate or complete. It
is supposed to embrace those rights which lie in contract; those
which are executory; as well as those which are executed."
And in *Jackson v. Howell*, 17 Johns. 283, it is defined as "the
highest right a man can have to anything; being used for that
right which one hath to lands or tenements, goods or chattels,
which no way depend on another man's courtesy." When the
statute is read and construed in the light of, and in connection
with the common law, and the principles and policy it was in-
tended to supersede, there can be no doubt that the term
"property," as employed in the statute, comprehends every
species of property, and every right of property, to which the
marital rights of the husband would have extended, and which
could have been converted from the property and right of the
wife, into his property and right. In *Walthall v. Goree, supra*,
it is said: "By .this legislation, the one legal person of the
common law has been resolved into two distinct persons, so far,
at least, as the capacity of taking separate estates is concerned."
The character of the property, or right of property, is not of
importance; nor is it material whether it resided in the wife
at the time of the marriage, or is subsequently acquired. If,
in the creation of the right, there is not a limitation to the sole
and separate use of the wife, the constitution and statutes in-
tervene, and pronounce that it is her separate estate—that it is
held by her freed from all right and claim of the husband—
held as if she were not associated with him in marriage.

If the covenant for the payment of the annuity, and the
obligation in the mortgage, had been payable to two distinct
persons by name, there would be no doubt that they would
have taken it by moieties, though an action at law for its re-
covery must have been in their names jointly. The statute
converting the husband and wife into two distinct persons, as
to property and rights of property, they take the annuity by
moieties, as they would have taken if not married.— *Walthall
v. Goree, supra*. It is unimportant, in any view of this case,
whether, by the terms of this covenant and mortgage, an
equitable separate estate is created. The rights of the wife
are the same, whether her right is to be deduced from the
terms of the covenant and mortgage, or from the operation of

the constitution and statutes. The husband is clothed with the power to receive the annuity; but the power to make it his own by receiving is excluded. It is for "the mutual benefit" of himself and wife that he is authorized to receive it. If we regard the wife's interest in the annuity as her statutory estate, as trustee for the wife, the husband would have been entitled to receive it; and conferring the power in express terms, is the mere expression of the legal effect and operation, in this respect, of the covenant and mortgage. If regarded as an equitable separate estate, the husband would receive the annuity, charged with a trust to apply it to the benefit of the wife, as well as for his own benefit. In either case, upon receiving the annuity, he would become a trustee, and liable to account to the wife.

The assignment made by the husband is, in its terms, limited to his right and interest; was not intended to embrace more, and is incapable of operating upon or affecting the right of the wife. The indorsement, or the transfer in any mode, by one of several payees or obligees of an instrument, will not pass the title. The largest operation it can have is as an equitable assignment of the right of the assignor or indorser.—2 Parsons' Notes & Bills, 4.

2. The former suit was the suit of the husband only, not the suit of the wife. The decree rendered was not a decree upon the merits, but of dismissal, in pursuance of the agreement of the husband. The legal presumption is, that the husband had by agreement adjusted the matter in controversy, so far as he had rights or interests involved; and it would operate as a bar to another suit by him, founded on the claim he had adjusted. He was without power, by any settlement or adjustment, to extinguish the rights and interests of the wife, and there is no indication of any purpose on his part to affect them. *Michan v. Wyatt*, 21 Ala. 813; *Thomas v. James*, 32 Ala. 723.

3–4. The sale of the mortgaged premises by the personal representatives of Cary, deriving their appointment from a tribunal in New York, was not a valid execution of the power of sale contained in the mortgage executed by Belshaw and Powell to Tatham. It was inoperative to pass title to the purchaser, to cut off the equity of redemption of the mortgagor, or to impair the rights of junior mortgagees to be let in to redeem.—*Sloan v. Frothingham*, 65 Ala. 593. Irregular and unauthorized as was the sale, the money received having been properly applied by the personal representatives, and the domestic personal representative, with the heirs and next of kin, having ratified and confirmed it, the purchaser is entitled to subrogation to their rights. He is an equitable assignee of the mortgage, and of the mortgage debt. The purchasers from him succeed to his rights,

[Sloan v. Frothingham.]

and are entitled to the benefit and protection of the debt and mortgage.—2 Jones Mortgages, §§ 1678, 1903.

5.   This, however, is as far as the ratification and confirmation can extend.   If the sale had been regular—if it had been a valid execution of the power—it would have been the equivalent of a foreclosure under the decree of a court of equity.   A foreclosure and sale, under a decree of a court of equity, would have affected and bound only the parties to the suit, not concluding or operating to the prejudice of those who were not parties.   The title only of the parties would pass to the purchaser.   The irregular, unauthorized sale is incapable of ratification or confirmation by the one party in interest, to the prejudice of others who do not join in it,—as incapable as would be a decree of foreclosure to bind parties not before the court. As to parties other than themselves, the ratification and confirmation of the sale by the personal representative, the heirs and next of kin of the assignee of the mortgage and mortgage debt, is *res inter alios acta.*—1 Jones Mortgages, § 732.

6.   The sale was made with the knowledge, and if not with the expressed consent, certainly without the dissent of the mortgagor, Belshaw.   He was not in ignorance, or under misapprehension, of any of the facts attending the sale, unless it was superinduced by his own neglect to make inquiry.   For more than seven years there was, on his part, unqualified acquiescence in the sale.   .Whether, under these facts, he could not be deemed to have waived his right to avoid the sale, if a material question, would not be free from difficulty.   There is more than the failure to dissent from, or object to the sale, at the time it was made, and continuous acquiescence in it.   The surplus of the proceeds of the sale, after satisfying the mortgage debt, ascertained and computed by himself, upon an erroneous method (as it now seems) of calculating the interest, he received from the purchaser.   It is a plain principle of right and justice, that if there is an unauthorized sale of property, real or personal, the owner can not take the purchase-money, and reclaim the property. The books abound with cases, in which courts of equity have precluded parties, who have adopted and ratified unauthorized sales, by receiving the whole or a part of the purchase-money, from setting them aside, to the prejudice of the parties from whom the money was received.   In the application of this principle, no distinction is made between sales which are void, and sales which are voidable.   The whole principle is, that the party had the right to repudiate, or to ratify the sale—to take its benefits, or reject them and its burdens.   Electing to take the benefits, there would be gross injustice, if, to the injury of others, he were permitted at pleasure to question the validity of the sale,—to retract the assent which he had given to it.

2 Smith's Lead. Cases, 770; *Goodman v. Winter*, 64 Ala. 434; *Pickens v. Yarborough*, 30 Ala. 408; *Merritt v. Horne*, 5 Ohio St. 307.

7. A mortgagee, entering into possession of the mortgaged premises before foreclosure, is accountable for the rents and profits he may receive, or which he could with reasonable diligence have received. The liability rests upon him, if he enters under a void or voidable sale.—*Bigler v. Waller*, 14 Wall. 297; *Childs v. Childs*, 10 Ohio St. 339.‹ The purchase of Frothingham, at the unauthorized sale made by the personal representatives of Cary, when confirmed, operated simply a transfer of the mortgage and of the mortgage debt, and to these the purchasers from him were subrogated. While in possession, he, and the purchasers from him, can be regarded in no other light than as mortgagees in possession before foreclosure. Standing in that relation, taking the rents and profits in trust for their application to the payment of the mortgage debt, they must account for then to the junior mortgagees, having the equity of redemption.—*Childs v. Childs, supra*.

8. The right of the husband to receive the annuity was expressed to be for the "mutual benefit" of himself and wife. The moiety of the wife, as we have said, he would take and hold in trust that he would apply it to her benefit. Occupying to the wife this relation of trust and confidence, if he disclaimed the relation, or placed himself in such a condition that a fair and diligent execution of the trust is not be expected from him, the power and duty of a court of equity to remove him is undoubted. Perry on Trusts, § 275. The abandonment of the wife, taking up a permanent residence in a foreign country, coupled with the assignment of his interest in the annuity, render the interference of the court necessary, the revocation of his authority to receive the moiety of the annuity to which the wife is entitled, and committing the authority to a trustee of the appointment of the court.

Without prolonging the further examination of the case, we are satisfied that Mrs. Sloan, as a junior mortgagee, should be let in to redeem, upon the payment of the senior mortgage debt, subject to a deduction of the net rents and profits received by the purchaser at the unauthorized sale of the mortgaged premises, or by his assignees, or which with reasonable diligence they could have received, and to the removal of the husband as trustee, and the appointment of a trustee to receive her moiety of the annuity payable during the joint lives of herself and husband. The decree of the chancellor, dismissing her bill, must be reversed, and a decree here rendered granting the relief indicated. The decree dismissing the cross-bill of Belshaw must be affirmed.