# Watson *v.* Steele.

*Bill in Equity for Redemption of Lands, by Purchaser at Sheriff's Sale.*

| 78  361|
| 117  574|

1. *Lien of execution, and title of purchaser at sale.*—When the lien of an execution has been kept alive by the issue and return of an *alias* from term to term, without the lapse of an entire term (Code, § 3211), and there has been no stay by order of the plaintiff or his attorney, a purchaser at the sale under it acquires a title superior to any intervening right derived from the defendant.

2. *Rights of assignee of equity of redemption, and liability for rents.*—A purchaser of the equity of redemption, paying the mortgage debt, and taking an assignment of the mortgage to himself, acquires, as against a purchaser at execution sale against the mortgagor, no better title than his vendor (the mortgagor) possessed; and the rents not due at the time of the sale under execution passing to the purchaser as an incident of the reversion, such purchaser of the equity of redemption is liable for them, if he receives them, as his vendor would have been liable for use and occupation, if he had continued in possession after the sale under execution.

3. *Rights of purchaser at execution sale against mortgagor; liability of assignee for rents, as mortgagee in possession.*—The payment of the mortgage debt by a third person, after the law-day, does not devest the title of the mortgagee; and if such third person takes an assignment of the note and mortgage to himself, thereby acquiring the legal title, the purchaser at execution sale against the mortgagor may maintain a bill to redeem from him, and hold him liable for rents and profits as a mortgagee in possession.

APPEAL from the Chancery Court of Greene.

Heard before the Hon. THOS. COBBS.

The bill in this case was filed on the 30th December, 1881, by Ormond S. Steele, against William L. Watson and John D. Steele; and sought to redeem a tract of land of which said Watson was in possession, and to hold him accountable for rents and profits during his possession. The land had belonged to said John D. Steele, and was sold under execution against him on the 1st August, 1881; the complainant becoming the purchaser, at the price of $15, and receiving the sheriff's deed. This execution was issued on the 17th April, 1881, on

a judgment for $288.20, which was recovered by Rittenhouse Moore against said John D. Steele, in the Circuit Court of said county, on the 20th April, 1874, and on which former executions had been issued as follows: April 27th, 1874; May 9th, 1878; November 15th, 1878; May 15th, 1879; December 27th, 1879; May 31st, 1880; October 28th, 1880. Each of these executions, except the first (which was returned "No property found"), was levied on the lands, and was returned by the sheriff "Returned for an *alias*, by order of plaintiff's attorney," or "Returned for an *alias*," until that of the 28th October, 1880, which was "Returned for an *alias*, for want of time to sell;" and the lands were sold under the execution issued on the 17th April, 1881. The complainant afterwards took an assignment of Moore's judgment to himself; and he claimed the right to redeem, both as the owner of the judgment, and as the purchaser at the sheriff's sale.

On the 2d March, 1878, Steele conveyed the lands by mortgage, containing a power of sale, to Gustave Braune, to secure an indebtedness evidenced by his promissory note of the same date. On the 3d April, 1880, W. L. Watson recovered a judgment for $370 against said Steele, and he procured an assignment to himself of another judgment, for $225, which one Hawkins had recovered against Steele on April 1st; and on the 4th November, 1880, these executions having been levied on the lands, Steele conveyed the lands to Watson, in satisfaction of these two judgments, and of his agreement to pay off the mortgage debt to Braune; Watson executing, at the same time, a written agreement to allow Steele to redeem the lands, "at any time within two years, in the same manner, and upon the same terms as if said lands had been sold and conveyed by the sheriff." On the 13th December, 1880, Watson paid the mortgage debt to Braune, and took from him an assignment of the mortgage, in these words: "For and in consideration of the sum of $310.62, in hand paid by W. L. Watson, I, G. Braune, do by these presents assign, transfer, and sell unto the said W. L. Watson the within described mortgage, made by John D. Steele and wife to the undersigned, as well as the note and debt secured thereby. Given under my hand and seal," &c. Watson took possession of the lands under this purchase, and erected valuable improvements; and he denied the complainant's right to redeem, claiming that the lien of the executions on the judgment in favor of Moore was lost, and that the complainant acquired nothing by his purchase at execution sale. He demurred to the bill for want of equity, assigning numerous grounds of demurrer; and he filed a cross-bill, in which he alleged that the lands were not correctly described in Steele's conveyance to him, and that the complain-

[Watson v. Steele.]

ant's bill was filed in the interest of said John D. Steele, who made no defense to the suit. The cross-bill prayed that the conveyance be reformed, that the entry of satisfaction of said judgments be set aside, and that said Watson be allowed to sue out executions on them as if said entry had not been made.

The chancellor overruled the demurrer to the original bill, held the complainant therein entitled to redeem, and directed the register, in stating the account, to "charge said Watson, as mortgagee in possession, with the rents of said lands collected by him, or which he could have collected by due diligence, for the years 1881, 1882, and 1883;" and he dismissed the cross-bill. Watson appeals from this decree, and assigns each part of it as error.

G. B. MOBLEY, for the appellant.

J. B. HEAD, *contra*.

SOMERVILLE, J.—The title which the complainant acquired to the land in controversy, by the purchase made by him on the first of August, 1881, under the execution issued on his judgment against John D. Steele, was clearly paramount to all other liens and incumbrances on the land, except the Braune mortgage, which was paid by, and assigned to the defendant, Watson. The complainant's execution lien was in full force and unimpaired, both in April, 1880, when the two judgments owned by defendant were rendered, and in November of the same year, when defendant purchased from John D. Steele the equity of redemption in the land. The mere delay on plaintiff's part, in executing his judgment, did not affect his lien, as against the defendant in execution. There was no lapse of an entire term between the suing out of any two of the *alias* executions issued between May, 1878, and the date of the sheriff's sale in August, 1881, nor was there any stay during this time by order of the plaintiff, or his attorney. Any intervening right, therefore, acquired by the defendant during this intermediate period, was subordinate to the preferred lien of the plaintiff's execution.—Code, 1876, § 3211; *Keel v. Larkin*, 72 Ala. 493; *Dryer v. Graham*, 58 Ala. 623. It is important to keep this fact in mind, as a controlling fact in the whole case.

The matter of chief objection to the chancellor's decree, as urged by appellant's counsel, is, that he has charged the defendant with rent and for use and occupation for the years 1881, 1882, 1883, as mortgagee in possession. This is said to be erroneous, for the reason that the defendant was the purchaser of the equity of redemption from John D. Steele, and

that he had satisfied the Braune mortgage, taking an assignment of it to himself only from abundant caution.   It is plain that the defendant, by this purchase of the equity of redemption, acquired no better title than his vendor, the mortgagor, had.   He was simply placed in his vendor's shoes; and as the title of the mortgagor was subject to the lien of plaintiff's judgment, so was the title acquired by the defendant as purchaser.   If the defendant had never made the purchase in question, the rent for the year 1881, not being due at the time of the sheriff's sale in August of that year, would not have belonged to the mortgagor, who was defendant in execution, but would have passed to the plaintiff as purchaser at the execution sale, on the principle, that rent not due is regarded as an incident of the reversion, or part of the freehold.—*Gayle v. Randall*, 71 Ala. 469.   So the mortgagor, after the sheriff's sale, would have been liable to the complainant, for use and occupation, except as against the claim of the mortgagee.   He was the owner of the land as against all the world, except the mortgagee.   The defendant, therefore, could claim no title superior to that of complainant, except as assignee of the Braune mortgage; and such a claim would authorize him to be charged with the rents actually collected, or which he could have collected by due diligence during the years 1881–1883, inclusive, or for use and occupation, if defendant was himself in possession of the land sought to be redeemed in the bill.—*Dozier v. Mitchell*, 65 Ala. 512; *Sloan v. Frothingham*, 72 Ala. 589; *Butts v. Broughton, Ib.* 294.

The bill clearly had equity, as a bill for redemption.   The mere payment of the mortgage debts of the defendant, after the law-day of the mortgage, did not re-invest the legal title of the land in the mortgagor, or divest it out of Braune, as mortgagee.—*Slaughter v. Swift*, 67 Ala. 494.   The assignment of the debt and mortgage by Braune to the defendant conveyed the legal title to him, and this was a bar to an action of ejectment at law.

The dismissal of the defendant's cross-bill worked no possible prejudice to him.   The complainant admitted the alleged misdescription in the land; and if it had been corrected, according to the prayer of the cross-bill, this could not have affected the complainant's right to redeem, which was adjudged by the court to exist.

We find no error in the chancellor's decree, and it is accordingly affirmed.