# WASHINGTON COUNTY.

---

## EDWARD S. BREWER *et al. vs.* ANNA NASH *et als.*

When, after a defective exercise of the powers of sale contained in a mortgage, the mortgagors receive the surplus proceeds of the sale, ignorant of the defects in the sale, but after learning the defects continue to keep such proceeds, they are estopped from denying the purchaser's title. They cannot at the same time repudiate the sale and enjoy the benefits of it.

A *bonâ fide* purchaser, at a mortgagee's sale which proves defective, is after paying the purchase money subrogated to the rights of the mortgagee. The mortgage is in equity regarded as assigned to such purchaser, even if the mortgagee's deed to him does not contain language amounting to a legal assignment. Such a purchaser is not a stranger to the estate, but is equitably subrogated to the mortgagee's rights.

These doctrines hold even in case of a minor whose guardian inserted in the mortgage invalid powers of sale.

Nor is it in equity material that the mortgage was discharged of record after sale made, and after the purchaser's right of subrogation had accrued to him.

BILL IN EQUITY for an injunction. On demurrer to the bill.
*Providence, February* 16, 1889. DURFEE, C. J. The case

stated in the bill is this: October 16, A. D. 1876, George M. Nash, being owner in fee simple of two lots of land in the town of Westerly, mortgaged them to the Westerly Savings Bank as security for his promissory note to said bank for $7,500, with power to Simeon F. Perry, treasurer of said bank, or his successors in office, to sell said lots in case of default. George M. Nash subsequently died, leaving a widow and four children, George E., Frank H., Harriet J., and Anna Nash, his sole heirs at law, said Anna being a minor. Afterward the widow and the three adult children, together with the guardian of said Anna, thereunto duly authorized, gave a second mortgage to said bank on said two lots and another lot and certain personal property, as security for a note for $7,500 given by said George E. for the common benefit of all the grantors. The mortgage contained a power to the bank to sell in case of default. August 17, A. D. 1881, the conditions of both mortgages having been broken, the bank advertised the mortgaged property, except the lot not in the first mortgage, for sale at auction under the powers in both mortgages, and at the auction caused the same to be struck off to James D. Brewer, the highest bidder, for $19,500, on receipt of which it gave him a deed. The deed purports to convey to him the property so struck off to him, and purports in the body to be the deed of the mortgagors in both mortgages, but by the Westerly Savings Bank as attorney under the powers in both, and is signed and sealed only by the mortgagors in the second mortgage by said Savings Bank through the agency of Simeon F. Perry, treasurer. James D. Brewer entered under the deed, and upon the faith of it spent large sums in improvements. He died in 1886, leaving a son, the complainant Edward S. Brewer, who succeeded him in ownership, and likewise spent large sums in improvements. The bank, after retaining out of the proceeds of the mortgage sale enough to pay the expenses and the two mortgages, having a surplus, paid it over to Samuel H. Cross, who was administrator and agent for the estate of George M. Nash, and also guardian for Anna Nash. The bill alleges that Cross paid over their shares of the surplus to the widow of George M. Nash, to Harriet J. Nash, Frank H. Nash, and Jessie H. Cross, assignee of George E. Nash, and that they received the same well

knowing it to be the surplus from the money paid by James D. Brewer, and afterward, on Anna Nash, his ward, attaining her majority, paid to her, as part of her estate in his hand, her share of said surplus, which she received knowing it to be a part of said surplus. The deed to James D. Brewer was made October 6, A. D. 1881, and December 8, 1881, the bank discharged on the record both mortgages. June 28, A. D. 1887, Anna Nash, Frank H. Nash, and Harriet J. Nash brought an action of ejectment against John F. Champlin and Charles A. Stone, tenants of Edward S. Brewer of the first of the tracts of land described in the two mortgages, to recover possession of their undivided fourth parts thereof. This bill is brought against them to have them enjoined from prosecuting said action. They have demurred to it generally for want of equity.

It is not clear to us that the deed given by the bank to James D. Brewer is not good as a conveyance under the second mortgage so far as the widow and the three older children of George M. Nash are concerned. But it is assumed by the complainants and urged by the defendants that there are defects of sale or execution, which invalidate it as a legal instrument, though the defects assumed on the one side and urged on the other are not the same. The complainants seek relief on the ground of equitable estoppel, and we will consider the case on that ground; for, whether the conveyance be good at law as against the widow and the older children or not, it is not good at law as against Anna Nash, since the authority to mortgage conferred upon her guardian did not authorize the insertion of the power to sell in the mortgage. *Barry* v. *Clarke*, 13 R. I. 65.

The contention of the complainants is, that the defendants, who are plaintiffs in the ejectment suit, having received their shares of the proceeds of the mortgage sale, knowing them to be such shares, and having allowed the purchaser and his son to go on improving the estate at great expense in the belief that their title was good, are equitably estopped from now denying the title, and should therefore be enjoined from prosecuting their action at law. There can be no doubt that the parties receiving the money would be subject to such estoppel, if, when they received it, they knew not only that it was a part of the proceeds of the mortgage sale,

but also the circumstances which invalidate, or are supposed to invalidate, that sale and the conveyance under it. *Smith* v. *Warden*, 19 Pa. St. 424; *Maple* v. *Kussart*, 53 Pa. St. 348; *Brewster* v. *Baker*, 16 Barb. S. C. 613; *Breeding* v. *Stamper*, 18 B. Mon. 175; *Wood* v. *Seeley*, 32 N. Y. 105; *Flanigan* v. *Turner*, 1 Black, 491; *Pursley* v. *Hays*, 17 Iowa, 310; *Deford* v. *Mercer*, 24 Iowa, 118; *Sloan* v. *Frothingham*, 72 Ala. 589, 608. The bill does not allege such knowledge. But assuming that such knowledge was necessary to create the estoppel, and that the parties have not lost their right to insist upon it by their *laches* and delay, it still seems clear to us that if the parties, who received the money without the knowledge, continue to keep the money after acquiring it, the estoppel will likewise continue. They cannot be permitted to repudiate the mortgage sale and at the same time insist upon having the benefit of it. *Maple* v. *Kussart, supra.* But, furthermore, we think the complainants are entitled to relief on another ground.

James D. Brewer entered into possession of the premises, which the defendants are trying to recover at law, as purchaser at the mortgagee's sale, and continued to occupy them during his life as such, and the complainant, Edward S. Brewer, has succeeded to his title or supposed title and occupation; and therefore, if for any reason his title under the mortgagee's sale is defective, why should he not be allowed to protect himself under the mortgages, holding, at least, by title as good as the mortgagee would have had if there had been no sale? The language of 2 Jones on Mortgages, § 1902, is: "If the sale under the power is subsequently declared void for any irregularity, a purchaser who has paid the purchase money is subrogated to the rights of the mortgagee under the mortgage, which is regarded as assigned to him." Of course, the deed given by the mortgagee under a void sale may contain language which will amount to a legal as well as an equitable assignment; *Brown* v. *Smith*, 116 Mass. 108; *Burns* v. *Thayer*, 115 Mass. 89; but the doctrine is, that, even without such language, the purchaser who has paid the purchase money is entitled to be regarded in equity as if he were the assignee of the mortgage. *Jones* v. *Mack*, 53 Mo. 147; *Honaker* v. *Shough*, 55 Mo. 472; *Russell* v. *Whitely*, 59 Mo. 196; *Johnson* v. *Robertson*, 34 Md. 165; *Robinson* v. *Ryan*, 25 N. Y. 320; *Muir et al.* v. *Berkshire et al.* 52 Ind. 149;

*Brobst* v. *Brock*, 10 Wall. 519, 534; *Johnson* v. *Sandhoff*, 30 Minn. 197; *Sloan* v. *Frothingham*, 72 Ala. 589, 604; *Frische* v. *Kramer's Lessee*, 16 Ohio, 125; *Stark* v. *Brown*, 12 Wisc. 572; *Kelly* v. *Duff*, 61 N. H. 435; *Taylor* v. *The A. & M. Association of West Ala.* 68 Ala. 229.

The grounds of decision are not very fully developed in these cases, but it seems to us that the true ground is this, that, while ordinarily a stranger to the estate who voluntarily pays off a mortgage thereon is not entitled to subrogation to the rights of the mortgagee, a purchaser at the mortgagee's sale, even when the sale is void, is not to be regarded as a mere stranger; but that, having bid off the estate in good faith on the invitation of the mortgagee to do so, when, supposing his bid to have been effectual to invest him with the equitable or executory title, he pays the amount of his bid and the same is applied to the mortgage debt, he has a most persuasive equity to be subrogated to at least the rights of the mortgagee who invited his confidence. In such a case the court does simply what the mortgagee would be bound in conscience to do himself, if he could, when it treats the purchaser as the assignee of the mortgage. And, of course, where the purchaser has entered under the mortgagee's deed and made improvements, this equity is strengthened. *Muir et al.* v. *Berkshire et al.* 52 Ind. 149. In *Kelly* v. *Duff*, 61 N. H. 435, where a person, erroneously supposing he had an interest in an estate, paid off a mortgage thereon, it was held that he was entitled to be treated as an equitable assignee of the mortgage. And in this view it also seems to us that it does not matter that the power of sale in the second mortgage was invalid, so far as it purported to be executed by the guardian of Anna Nash, since she does not for that reason have any better right than her brothers and sisters have to profit by the payment of the mortgages. Nor do we see that it makes any difference in equity that the mortgages were discharged on the record, the discharge having been made on the assumption that the title to the estate had vested in the purchaser, and after his equitable right to subrogation had already accrued to him. *Bacon* v. *Goodnow*, 59 N. H. 415; *Guckian* v. *Riley*, 135 Mass. 71, 74.                                    *Demurrer overruled.*

*Nicholas Van Slyck & Cyrus M. Van Slyck*, for complainants.

*Albert B. Crafts*, for respondents.