# Sloan *v.* Frothingham.

*Bill in Equity for Foreclosure of Mortgage, and Account.*

1. *What is revisable, on appeal from decree on demurrer.*—On appeal from the chancellor's decree sustaining a demurrer to the bill, this court will only consider the causes of demurrer specifically assigned, without regard to any other amendable defects in the bill.

2. *Sale under power in mortgage, by foreign administrator.*—The statute which authorizes a power of sale in a mortgage to be executed by "the personal representative of any person who, by assignment or otherwise, becomes entitled to the secured debt" (Code, § 2198), applies only to domestic administrators, and to foreign domiciliary administrators who have had their letters recorded here, and given bond as required by our statutes (Code, §§ 2637–40); and a sale by a foreign administrator, who has not complied with these statutory requisitions, is not merely voidable, but absolutely void.

3. *Waiver of objections to sale, by acquiescence.*—Acquiescence for an unreasonable length of time in a sale under a power in a mortgage, which is merely voidable at the election of the person who has the equity of redemption, will, if unexplained, operate as a confirmation of the sale, and a waiver of all objections to it; but, when the sale is absolutely void, such effect will not be attributed to acquiescence, or a failure to seek redemption, until after the expiration of the period prescribed as a bar by the statute of limitations.

APPEAL from the Chancery Court at Montgomery.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed on the 9th August, 1879, by Mrs. Maria L. Sloan, a married woman, suing by her next friend, against her husband, Edward A. Sloan, James H. Frothingham, and several other persons; and sought to set aside a sale of certain real estate, made under a power in a mortgage executed by Robert R. Belshaw and others to Charles B. Tatham, of New York, and to have the property sold in foreclosure and satisfaction of a mortgage given by said Belshaw to the complainant and her husband; also, for

an account of the rents and profits of the property, the removal of said Edward A. Sloan from the trusteeship of the complainant's separate estate, and for general relief.

The mortgage which the bill sought to foreclose, and a copy of which was made an exhibit, was dated the 7th day of March, 1873, and recited, as its consideration, the compromise and settlement of a controversy which had existed between the complainant and said Robert R. Belshaw, respecting their interests in the property, known as the "Belshaw corner" in the city of Montgomery; by the terms of which settlement, as reduced to writing and signed by all the parties in interest, the complainant and her husband conveyed to said Belshaw her interest in the property, and Belshaw agreed to charge it with the annual payment of $900 to the complainant and her husband, during their joint lives, and to her as survivor for life.; and the mortgage was given to secure the payment of this annuity as stipulated, and contained a power of sale on default. This mortgage was, by its terms, made subject and subordinate to another mortgage already existing on the property, a copy of which was also made on exhibit to the bill.

This former mortgage, which was dated the 30th April, 1860, was executed by said Robert R. Belshaw, and James W. Powell and wife, to said Charles B. Tatham, of Brooklyn, Kings county, New York, to secure the payment of five promissory notes, amounting to nearly $13,000, and falling due one, two, three, four, and five years after date. This mortgage was transferred by Tatham, "at or before the maturity of said notes therein described, to William H. Cary, who was then a citizen of New York." After the execution of this mortgage, "and before the sale had under it as hereinafter stated," as the bill alleged, "said Powell transferred and conveyed to complainant and said R. R. Belshaw, by proper deed of conveyance, all his right, title, and interest in said property, upon their promise and agreement to pay said mortgage." On the death of said Cary in New York, at what time does not appear, letters of administration on his estate were there granted to Mrs. Maria Cary, his widow, and Isaac H. Frothingham; and on the 20th May, 1873, the notes secured by the mortgage not having been paid, they caused the property to be sold, under a power of sale contained in the mortgage. This sale was made through an agent in Montgomery, neither of said administrators being present at the time; and they never at any time had their letters of administration recorded here, or gave bond, as required by the statutes of Alabama. Code, §§ 2637–40. At this sale, the property was bid off by

said agent in the name of James H. Frothingham, to whom the administrators executed a conveyance on the 15th November, 1873, and he executed to them a mortgage to secure the payment of his notes for the purchase-money. Said Frothingham held possession of the property, receiving the rents and profits, until the 31st July, 1879, when he sold and conveyed to James A. Farley and Moses Brothers, a partnership doing business in the city of Montgomery, and placed them in possession.

It is unnecessary to notice the allegations of the bill as against E. A. Sloan, the complainant's husband. James H. Frothingham, Robert R. Belshaw and wife, Charles Tatham, James A. Farley, the partners composing the firm of Moses Brothers, Mrs. Maria Cary and Isaac Frothingham, both individually, and as administrators of said William H. Cary's estate, were all made defendants to the bill. It was alleged that the payments made on the debt to Tatham, and the rents and profits of the property for which the several defendants were liable, were sufficient to pay the debt secured by the mortgage. The bill prayed that the sale under the mortgage, made by the agent of the New York administrators, and the subsequent conveyances, be set aside; that an account be taken of the rents and profits of the property while in possession of the several defendants, and the amount be applied to the payment of any balance that might be found due on the debt secured by the mortgage to Tatham, and the residue to the complainant's debt; that her mortgage be foreclosed, and the property sold; and for other and further relief, under the general prayer.

A demurrer was filed by Edward A. Sloan, which the chancellor overruled. A joint demurrer was filed by all the other defendants, assigning eighteen grounds of demurrer; which demurrer the chancellor sustained, on several of the grounds assigned, as stated in the opinion of the court. From the decree sustaining the demurrer, the complainant now appeals, and here assigns it as error.

JNO. GINDRAT WINTER, with CLOPTON, HERBERT & CHAMBERS, for the appellant.—Under the facts stated in the bill, aside from the question as to the authority of the New York administrators to make any sale, the sale was voidable, at the election of either Belshaw or the complainant, because the agent of the sellers was also the agent of the purchaser, and the purchase was, in effect, made for the vendors. This is not on the ground of fraud or injury, but for the prevention of fraud, and on grounds of public policy.—*James v. James*, 55 Ala. 525; *Robinson v. Cullum & Co.*, 41 Ala. 693;

[Sloan v. Frothingham.]

2 Jones on Mortgages, § 1877. As a voidable sale, the right to set it aside has not been lost by laches, or acquiescence for an unreasonable length of time. The non-residence of the administrators, the coverture of the complainant, and th facts alleged as to her husband's interference, afford a sufficient explanation of her delay in filing the bill. But the doctrine of acquiescence and waiver does not apply to void sales; and this sale, it is insisted, was absolutely void, for the want of authority in the New York administrators to make it, having never complied with the statutory provisions of Alabama, which alone could give them power to act officially here.—*Hatchett v. Berney*, at the last term; *Cutter v. Davenport*, 1 Pick. 81; *Hutchins v. State Bank*, 12 Metc. Mass. 421; *Goodwin v. Jones*, 3 Mass. 514; *Young v. O'Neal*, 3 Snead, 55; *Riley v. Mosely*, 44 Miss. 37; *Anderson v. Gregg*, *Ib.* 171; *Caldwell v. Harding*, 5 Blatchf. 501; 10 Yerger, 283; 1 Dana, 445; 1 Miss. Walker, 211; 6 Barbour, 429; 7 Humph. 86; 1 Wms. Ex. 376; *Sheldon v. Rice*, 30 Mich. 301; *Rutherford v. Clark*, 4 Bush, Ky. 27.

WATTS & SONS, *contra.*—By the express words of the statute, the power of sale in the mortgage was a part of the security, and might be exercised by any person who became the owner of the secured debt by assignment, or his personal representative.—Code, §. 2198; *Lewis & Lyman v. Wells*, 50 Ala. 198. Independent of any statute, such is the legal effect of a power of sale, given to a mortgagee, " his executors, administrators, or assigns"; and this, as matter of contract, without reference to any question of territorial jurisdiction.—*Doolittle v. Lewis*, 7 Johns. Ch. 45–48; Jones on Mortgages, § 1786, and authorities cited in note; *Brock's Adm'r v. Frank*, 51 Ala. 85. No fraud, inadequacy of consideration, or other irregularity in the sale is averred, except the fact that the agent of the vendors also acted as the agent of the purchaser; and this could, at most, only make the sale voidable.—*Elliott v. Wood*, 45 N. Y. 71; 2 Jones on Mort. §§ 1879–81; *Lewis v. Wells*, 50 Ala. 198. If the sale be voidable, the long delay in filing the bill shows acquiescence in it, and is a waiver of all irregularities.—*James v. James*, 55 Ala. 525; 2 Jones' Mort. § 1865.

BRICKELL, C. J.—Of the numerous causes of demurrer, the chancellor sustained only the third, fifth, seventh, tenth, twelfth, thirteenth and fourteenth, of those assigned by Frothingham and others, all other causes being overruled. Whether these causes of demurrer are well taken, is the only question which can be now considered, however patent may

be the insufficiencies of the bill in other respects, which are capable of being cured by amendment in the court below. These causes of demurrer resolve themselves really into two questions, which may be thus stated : *first*, whether the sale made by the administrators of Cary was not a valid exercise of the power in the mortgage to Tatham ; and, *second*, if it was not, whether the appellant has lost her right of redemption as a junior mortgagee, by acquiescence in the sale for a period of six years with full knowledge of all the facts.

By statute it is declared, " where a power to sell lands is given to the grantee, in any mortgage, or conveyance intended to secure the payment of money, the power is part of the security, and may be executed by any person, or the personal representative of any person, who, by assignment or otherwise, becomes entitled to the money thus secured." Code of 1876, § 2193. The point of contention is, whether the personal representatives of the assignee of a mortgage debt, appointed in the State of his residence, who have not caused their letters of administration to be recorded, and given bond in accordance with the statute (Code of 1876, §§ 2637–40), can here make a valid sale of lands conveyed by the mortgage. It is true, as urged in argument, that the mortgage debt was of the personal assets of the intestate, Cary, and that personal property has not, as to its succession and distribution, as a general proposition, any locality distinct from, and independent of that of the domicile of the owner. It is also true, that on his death the personal representative of his domicile succeeds to the title to all his personal property. It is also true, according to the current of modern authority in this country, that, as the personal representative of the domicile succeeds to the title, though he can not sue in another State, he may without suit receive payment of debts, or take possession of personal property found in a foreign jurisdiction. How far he can or may exercise authority in a foreign jurisdiction, depends, of necessity, upon the local law of the jurisdiction. It is only by the comity of the State, that his title and authority are so far recognized as to support payments, or the delivery of assets made to him voluntarily. The comity may be withheld, or extended, as the sovereignty may deem the best policy, most promotive of the good of its own citizens.

In *Hatchett v. Berney*, at the last term, it was held, that our statutes were in their terms prohibitory of the exercise of any authority in this State, by executors or administrators deriving authority from a foreign jurisdiction, and that payments made to administrators appointed in Tennessee, the domicile of the creditor, of a debt secured by mortgage on

lands situate in this State, could not be sustained against the claim to foreclose, of a domestic administrator, subsequently appointed, except so far as such payments had been properly applied in payment of debts, or in making distribution. Adhering, as we are constrained to do, to that construction of the statutes, the personal representatives of Cary, deriving their appointment from a tribunal in New York, not having recorded their letters of administration, and given bond, could not have received payment of the mortgage debt, if it had been tendered to them by the mortgagor. They could not have given any discharge, or entered on the record of the mortgage the fact of its satisfaction. The power of sale in a mortgage, in the language of the statute, is *part of the security*; and while the statute declares it may be exercised by any person, or the personal representative of any person, who becomes entitled to the money secured, it is intended that only such persons as are entitled to the money, and have the capacity of giving for it valid and operative acquittances, can or shall exercise the power.

A mortgage of lands is more than a mere chattel interest, or a mere security for a debt. It has the properties and qualities of a conveyance in fee, upon condition, especially in courts of law.—*Welsh v. Phillips*, 54 Ala. 309. Of all such instruments registration must be made, as of absolute conveyances, to preserve them against the rights of subsequent purchasers, or of creditors acquiring liens. The title to real estate is regulated, governed and established, by the *lex rei sitœ*; and whenever it is necessary to make title to lands through the official act of an executor or administrator, it must be the act of an executor or administrator deriving authority from, or recognized by the *lex rei sitœ* —*Kerr v. Moon*, 9 Wheat. 565; *Cutter v. Davenport*, 1 Pick. 81; *Hutchins v. State Bank*, 12 Metc. 424. The records of the proper tribunals of the *situs* then afford evidence of all the facts to support the title, and it is by our statutes contemplated that they must afford it. When authority is by the statute conferred on the personal representative of a mortgagee, or of the assignee of a mortgage debt, to exercise the power of selling lands, it was intended a personal representative here appointed, or appointed at the domicile of the mortgagee or assignee, who had caused his letters to be here recorded, and given bond with surety as is required by the statutes, should exercise the power. Of their appointment and authority, the records of our own courts then furnish evidence, and they are amenable to our laws. The sale of the mortgaged premises was *void*, not merely *voidable*.

Acquiescence for an unreasonable length of time, in a

[Ex parte South & North Ala. R. R. Co.]

sale of mortgaged premises, which is merely voidable at the election of parties who have the equity of redemption, if not fairly explained, will operate a waiver of the infirmities, and a confirmation of the sale.—2 Jones' Mort., § 1922. But, when a void sale is made—a sale which can not operate a dissolution of the relation of mortgagor and mortgagee, nor cut off the equity of redemption—acquiescence in it, or the failure to seek redemption for a less period than will form a bar under the statute of limitations, is not a waiver of the invalidity, or a confirmation of the sale,

Reversed and remanded.