JAMES T. TARTT *et al.*

*v.*

PHILIP H. CLAYTON *et al.*

109  579
24a 370

*Filed at Mt. Vernon May 15, 1884.*

1. MORTGAGE WITH POWER OF SALE—*sale under, not vitiated, if bought in part payment of mortgagee's indebtedness.* On the sale of land by a mortgagee, under a power of sale, for default in payment of moneys thereby secured, the fact that the purchaser pays no money to the mortgagee, but the amount of the bid is applied upon a debt due from him to the purchaser, under an arrangement to that effect before the sale, will not affect the validity of such sale.

2. SAME—*burden of proof to invalidate sale.* On bill to set aside a sale of land under a power in a mortgage, on the ground the notice of the sale was defective, and was published in an obscure paper, the burden of proving such ground rests upon the complainants.

3. SAME—*notice of sale—recitals in deed as evidence.* Recitals in a deed made by a mortgagee under a power of sale, of the giving of due notice of the sale, in conformity with the requirements of the statute and in pursuance of the provisions of such mortgage, by advertisement in a certain public newspaper printed and published in the county, for the space of thirty days, said advertisement containing a description of the real estate sold, with the time, place and terms of sale, show *prima facie* that the notice of the sale was good. The fact that such deed recites particularly certain essentials and omits certain others, does not repel the conclusion that the notice was good.

4. SAME—*sale under power—when personal notice necessary.* Where a mortgagee holding under a mortgage containing a power of sale, may have thrown persons succeeding to the rights of the mortgagor off their guard by seeking different relief by bill in chancery, it may be that before selling upon notice under the power of sale in the mortgage, he should notify the mortgagor or his assignee of his intention; but if a specific demand is made for the payment of the sum due, of the mortgagor, or one holding a second mortgage, such persons can not say they have been lulled into security; and the mortgagee, before selling under the power, is not bound to give personal notice to one holding an interest in the premises through the mortgagor, where it appears that the mortgagee had no notice of such one's interest. Nor is notice necessary to any one interested who was not lulled into security by the pendency of the bill in chancery.

5. SAME—*filing bill by mortgagee to set aside his deed to mortgagor, and his mortgage, does not deprive him of right to sell under power.*

Where a party has conveyed land to his daughter, taking back a note from her husband, secured by mortgage of the husband and wife, for the payment of an annuity of $200, the mere filing of a bill by him to set aside his deed to his daughter, and the annuity mortgage, and another mortgage given by his grantee and her husband, upon the allegation that the mortgage is not adequate security for the payment of his annuity, will not strip such party of the right to change his mind, and proceed to enforce the mortgage by a sale under a power therein, especially when all the defendants answer the bill, insisting that he has ample power to collect his annuity under the mortgage.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was a bill by James T. Tartt, and John A., Julius L. and Harris E. Prickett, the three last being partners, against Philip H. Clayton and Lucy A. Clayton, seeking to set aside a deed of certain lands, made October 7, 1881, to Lucy A. Clayton, by Philip H. Clayton, as mortgagee, under a power of sale in a mortgage given by Thomas M. Tartt, and Jennie C. Tartt, his wife, to said Philip H. Clayton. On November 1, 1875, Philip H. Clayton, being about to marry, conveyed to his daughter, Jennie C. Tartt, the land involved in this litigation, taking back from her and her husband, Thomas M. Tartt, a mortgage, to secure to him from September 1, 1876, the payment from them of an annuity, during his natural life, of $200, to be paid on September 1 of each succeeding year during his natural life, which mortgage provided that upon default in any of the payments, the mortgagee might advertise the land for sale in some public newspaper to be published in the county of Madison, for the space of thirty days, the advertisement to contain a description of the real estate, with the time, place and terms of sale; that upon the day and place named the mortgagee might sell said real estate at public auction, to the highest bidder, for cash in hand, and make a deed or deeds to the purchaser or purchasers, the sale to be without redemption; and that with the proceeds of the sale he pay, first, all costs and reasonable charges attending the sale and transfer; second, whatever sum might re-

main due and unpaid to the mortgagee upon such annual payments, and the remainder, if any, to the party of the first part, their heirs and assigns. This mortgage was duly recorded. Default having been made in the payment of $200 on September 1, 1880, and $200 on September 1, 1881, Philip H. Clayton advertised the property for sale, and on October 7, 1881, sold the same to Lucy A. Clayton, his wife, by marriage after the mortgage was given, for $439, she being the highest bidder, and he at once made a deed conveying the property to her, which is the conveyance sought to be set aside by the bill in this case. The right to have such sale and conveyance set aside is based upon the following facts: On January 26, 1878, Thomas M. Tartt, and Jennie C., his wife, made a second mortgage on the same land to Charles T. Clayton, a son of Philip H. Clayton, and a brother of Jennie C. Tartt, to secure the payment of a promissory note of that date, given by Thomas M. Tartt to said Charles T. Clayton, for $2316, payable in ten months from its date. In this mortgage the annuity mortgage is mentioned as a prior incumbrance. This second mortgage was afterwards foreclosed, and the property sold, under a decree of court, to satisfy the sum due on the same, and costs, and at the sale was bought by James T. Tartt for $3263.06, he being at that time the owner of the demand, as assignee of Charles T. Clayton, and a certificate of purchase was given to him by the master in chancery, dated February 14, 1880. Before the time of redemption expired, James T. Tartt assigned this certificate of purchase to a banking corporation, called "The Farmers' Exchange and Loan Company," and this company shortly afterwards assigned the same to the Pricketts, to whom the master made a deed, which was recorded September 27, 1881.

The grounds stated in the bill on which the sale and deed to Mrs. Clayton are sought to be set aside are:

*First*—That the advertisement of the sale, and the deed, are both insufficient.

*Second*—That there was pending, at the time of the sale, a bill, by which Philip H. Clayton sought to have his deed for this property to Mrs. Tartt, and the annuity mortgage, and the mortgage by Thomas M. Tartt and wife to Charles T. Clayton, set aside, and the title to the land restored to him. The recital in the deed to Mrs. Lucy A. Clayton, so far as relates to notice, was in these words: "Having first given due notice of the sale hereinafter mentioned, in conformity with the requirements of the statute and in pursuance of the provisions of said mortgage, by advertisement in the 'Madison County Sentinel,' a public newspaper printed and published in the county of Madison aforesaid, for the space of thirty days, said advertisement containing a description of the real estate aforesaid, with the time, terms, and place of sale." The advertisement itself was not produced by either party.

*Third*—That none of the parties in interest had actual notice of the sale.

*Fourth*—That the paper in which the notice was published was an obscure one, and that defendants in this suit, by reason thereof, and by reason of the pending suit, fraudulently concealed the sale, and threw the parties in interest off their guard, etc.

On the hearing, the circuit court dismissed the bill, from which order the complainants appealed to this court.

Messrs. Metcalfe & Bradshaw, and Messrs. Happy & Travous, for the appellants:

The bill to set aside his conveyance, by Philip H. Clayton, is a disclaimer of all claim under his mortgage, and is notice to all that he claims nothing by his mortgage, and lulled them into security. During the pendency of this suit, no matter what the motives were in filing the bill, the sale under the power, without notice to those in interest, that they might protect their rights, was a fraud. Whether these statements,

to constitute an estoppel, are made privately or in a suit, can make no difference. *Smith* v. *Newton,* 38 Ill. 230; *Ball* v. *Hooten,* 85 id. 159; *Baker* v. *Whitehead,* Breese, 132; *Cook* v. *Hunt,* 24 Ill. 535; *Young* v. *Foute,* 43 id. 33; *Moses* v. *Kreige,* 49 id. 84; *International Bank* v. *Bowen,* 80 id. 541.

Again, in a sale-mortgage such as Clayton's, he, as mortgagee, occupies the double relation of payee of the note and trustee to sell, and in testing the sale his acts are to be judged of by the law applicable to trustees. *Flower* v. *Elwood,* 66 Ill. 438; *Grover* v. *Fox,* 36 Mich. 461; *Ross* v. *Demoss,* 45 Ill. 447; *Hall* v. *Towne,* id. 493; *Roberts* v. *Fleming,* 53 id. 196; *Harper* v. *Ely,* 56 id. 179; *McHany* v. *Schenck,* 88 id. 357; *Hebert* v. *Bullo,* 42 Mich. 489; *Lee & Bassett* v. *Clay,* 38 id. 223.

The mortgage provided for a sale for cash, and the trustee could sell no other way. The arrangement to sell otherwise was made by the trustee before sale, and differs from a case where time is given after sale. *Mapps* v. *Sharp,* 32 Ill. 13; *Ross* v. *Demoss,* 45 id. 447; *Hall* v. *Towne,* id. 493; *Griffin* v. *Marine Ins. Co.* 52 id. 130.

Mrs. Clayton is not a *bona fide* purchaser for value. She paid no money. *Moshier* v. *Knox College,* 32 Ill. 155; *Powers* v. *Jeffreys,* 4 Scam. 387; *Brown* v. *Welch,* 18 Ill. 343; *Keys* v. *Test,* 33 id. 316.

Messrs. WISE & DAVIS, for the appellees:

It is contended that the recitals in the deed made under the power do not amount to *prima facie* evidence of due notice; but how does that amount to proof that such notice was not given? A thing may fall short of being *prima facie* proof of a thing, without being proof of the contrary. *Farrar* v. *Payne et al.* 73 Ill. 82.

As to the evidence of the due publication of the notice from the recitals in the deed, see *Farrar* v. *Payne,* 73 Ill. 82; *Weld* v. *Rees,* 48 Ill. 428.

There is no proof that Philip H. Clayton began his suit to set aside the mortgage with the fraudulent design of throwing appellants off their guard. Philip H. Clayton was not estopped from making sale under his mortgage during the pendency of his suit to set it aside. The mortgagors are not parties to the suit now before this court. They are not seeking to set aside the sale to Mrs. Clayton, nor is the Farmers' Exchange and Loan Company. To estop a party, there must be a fraudulent purpose of the party against whom it is applied, or his acts must produce a fraudulent result. *Flower et al.* v. *Elwood,* 66 Ill. 438.

Mr. Justice Dickey delivered the opinion of the Court:

After a very careful consideration of this record we think that as against James T. Tartt, one of the complainants, the decree was clearly right.

The evidence produced does not lead us to the belief that Philip H. Clayton, or Mrs. Lucy A. Clayton, has been guilty of any fraud or bad faith in the matter of the sale under the power in the annuity mortgage. Nor do we think the validity of the sale is affected by the fact that Mrs. Clayton, instead of paying to Philip H. Clayton the amount of her bid in cash, paid the same, under an arrangement made with him before the sale, by giving him credit to the amount of that bid, upon an existing indebtedness by him to her for a larger amount. There is no proof whatever tending to show that the paper in which the notice was published was an obscure paper, save the supposed declarations of Mrs. Clayton, mentioned by the witness Adams. She denies making the statement, and swears she does not know anything about the supposed obscurity of the paper. If the *status* of the paper were not what it ought to be, the fact, from its very nature, could have been proven affirmatively by any number of witnesses, and yet no proof of that kind is offered. That

charge is not sustained. Nor is there any proof offered to sustain the allegation that the notice, in itself, was defective in any particular. The notice was not produced by complainants, and no reason is shown for the failure to produce it. The burden of showing that the same was defective was upon complainants. The recitals in the deed sought to be set aside show, *prima facie*, that the notice was good. The fact that it recites particularly certain essentials, and omits certain others, does not repel the conclusion that the notice was good. The recitals do not profess to set out all that the notice contained. It is merely said in this regard, that the notice *embraced* the essentials specified. It is not to be inferred that these constituted the whole of the notice.

The mere filing of a bill by Philip H. Clayton, asking that his deed to Jennie C. Tartt, and the annuity mortgage, and the mortgage to Charles T. Clayton, be set aside, upon the allegation that the mortgage was, in the manner in which it was drawn, not adequate security for the payment of his annuity, did not strip him of the right to change his mind and proceed to enforce the mortgage, especially after all the defendants thereto who had been brought into court had answered the bill, insisting that he had ample power to collect his annuity by virtue of the mortgage. As well might it be said that these answers estopped them from questioning his right to sell under his mortgage, for by their answers they asserted *that* as his present and existing right. True, the pendency of such a suit may have thrown them off their guard, and thus imposed upon the mortgagee the duty of notifying them, in some way, that he proposed to exercise his rights under the mortgage. This he did do, by a specific demand upon Thomas Tartt and upon James Tartt for the payment of the two installments which had matured and become payable, respectively, on September 1, 1880, and on September 1, 1881, and he proceeded to advertise in less than a week after these demands. Thomas Tartt and James

Tartt therefore have no ground to complain of being lulled into security by the pending suit.

The only serious question in this regard has relation to the other complainants, composing the firm of John A. Prickett & Sons. The assignment of the interest of Charles T. Clayton to James Tartt carrying with it the right of redemption from the annuity mortgage, was made before the suit of Philip H. Clayton was instituted, and accordingly Thomas Tartt and wife, and James Tartt, were made defendants. In April, 1881, James Tartt having disclosed in his answer the fact that he had assigned his interest to the banking corporation, complainant took leave to, and did amend, his bill, making that corporation a party; but no process was served upon that corporation, nor does it appear it had any knowledge or notice of the pendency of the suit in question. And although it appears in proof that on the 27th day of September, 1881, a deed of the master conveying this land to them was placed on record, which deed purported to have been made under sale of the same upon proceedings under the second mortgage, and in which it is recited that the certificate of purchase was assigned by the banking corporation to John A. Prickett & Sons, still it does not appear that Philip H. Clayton or his wife had any actual knowledge that the Pricketts had any interest in the matter whatever. In fact, it is not so alleged in the bill.

This is not a question as to the legal effect of a deed in passing an interest in land. The only interest that deed passed to the grantees was the title of this land, subject to this annuity mortgage, and the recording of the deed vested that interest in the grantees as against any subsequent purchaser of that interest from James Tartt or from the corporation. It did not affect the right of Philip H. Clayton to enforce his annuity mortgage. The question here is one of personal good faith. If Philip H. Clayton, at and before the sale, was ignorant of the interests of the Pricketts, and Mrs.

Clayton, at the time of the sale, was ignorant of the same interests, no bad faith can be attributed to them upon the ground that no actual notice was given to them, nor can they complain no actual notice was given to them. True, they stand in the shoes of the Farmers' Exchange and Loan Company, and it is said no actual notice was given to it. It is not alleged in the bill that this corporation had any knowledge of the pending suit, nor is it alleged that this corporation did not in fact know of the sale sought to be set aside, before the same occurred. The testimony of John A. Prickett does tend to show that the corporation had no actual notice of the proposed sale until after it occurred, but it also tends strongly to show that the corporation was not misled or lulled into security by the suit of Philip H. Clayton. Prickett testifies that he was the president of that corporation, and that he did not know, until after the sale to Mrs. Clayton, that there was any default in the payment of any of the installments to be paid as annuity to Philip H. Clayton. Had he known of the bill of Philip H. Clayton seeking to set this mortgage aside, he would necessarily have known the ground alleged,— the non-payment of the annuity of 1880, and the peculiar provision of the annuity mortgage, which it was said rendered it inadequate security. It is therefore clear that the Farmers' Exchange and Loan Company was not lulled into security by the suit of Philip H. Clayton, and therefore was not prejudiced thereby.

As to the firm of John A. Prickett & Sons, who acquired their rights from the corporation in April, 1881, Philip H. Clayton, as trustee under the mortgage, owed them no duty he did not perform. He did not have any actual knowledge of their interests in this regard. The bill does not allege such notice, and no proof tends to show it. It is said the filing for record of their deed on September 27, 1881, was notice to him and to Lucy A. Clayton, the purchaser. This is true as to constructive notice. It is equally true that all

the complainants (embracing the Pricketts) had constructive notice of the sale, and should have attended to protect their interests.

After a careful consideration of this entire record, we find no error in the decree of the court below. The decree is therefore affirmed.

.                                                  *Decree affirmed.*