(79 South. 493)

DINKINS et al. v. LATHAM. (3 Div. 309.)

(Supreme Court of Alabama. Feb. 14, 1918. Rehearing Denied April 25, 1918.)

1. EVIDENCE ⊗══383(7)—FORECLOSURE—PRESUMPTIONS—"PRIVITY"—"PRIVY."

In law or equity, a deed to the purchaser at a foreclosure sale containing recitals showing full compliance with the terms of a mortgage is prima facie evidence of the facts stated therein, and sufficient to establish the fact of a validity of foreclosure as against the mortgagor and his privies in title in the absence of contrary evidence; the term "privity" or "privies" meaning mutual or successive relationship to the same right of property; for example, the executor is in privity with the testator, the heir with the ancestor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Privity; Privy.]

2. EVIDENCE ⊗══91—BURDEN OF PROOF.

Where the defendant's answer seeks no affirmative relief, the burden remains with complainant to prove the material allegations of his bill, although the right to relief is grounded on negative averments, unless the subject-matter thereof lies peculiarly within the knowledge of the other party.

3. EVIDENCE ⊗══383(7)—RECITALS IN DEED ON FORECLOSURE.

Rule that recitals in deed on foreclosure are prima facie evidence of valid foreclosure obtains as to foreclosure deed made by the mortgagee, his attorney in fact, or an auctioneer assuming to execute the power of sale.

4. MORTGAGES ⊗══369(7)—FORECLOSURE—EVIDENCE.

Evidence *held* prima facie to establish valid foreclosure of mortgage.

5. MORTGAGES ⊗══369(7)—BURDEN OF PROOF.

In suit to set aside a mortgage foreclosure sale on account of fraud, complainant has the burden to establish the allegations of fraud.

6. MORTGAGES ⊗══599(1)—DISAFFIRMANCE OF CONTRACTS—MORTGAGE FORECLOSURE.

In a valid foreclosure sale, under the powers contained in a mortgage, there is no field for the operation of the doctrine of disaffirmance by a minor affected thereby, and redemption must be effected within the period provided by statute.

7. MORTGAGES ⊗══369(2, 3) — FORECLOSURE — VALIDITY.

Mere fact that amount paid at foreclosure sale was less than, or disproportionate to, the

⊗══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

value of the land, or that the lands were susceptible to division, and a sale of part of them might have discharged the mortgage, does not entitle the mortgagors or persons in privity with them to have the sale set aside.

8. MORTGAGES ☞335—FORECLOSURE.

Rule that, as to persons not sui juris, it is error to decree a sale without learning whether the interest of such person will be promoted by a sale in parcels, does not apply to a sale by a mortgagee under a power in mortgage, which power may be exercised according to its terms, though hardship results.

Appeal from Chancery Court, Lowndes County; O. S. Lewis, Chancellor.

Bill by Rudolph Dinkins and others against H. S. Latham. From the decree rendered, complainants appeal. Affirmed.

The amendment to the bill, referred to in the opinion, is as follows:

A10. That if complainants are mistaken in their contentions hereinabove set out relative to the legal operation and effect of that particular paper writing referred to and designated as "Exhibit A," which purports to have been executed on January 5, 1895, reference being hereby made to the same, and as to its sufficiency as a valid mortgage, and if same is held to be a valid mortgage, then the complainants allege that there has never been a due foreclosure of said mortgage under the powers therein contained, and there has never been any valid exercise of the power of sale contained in said mortgage, and upon the death of said Sallie B. Dinkins her equitable right to redeem the lands described in said "Exhibit A" from said mortgage given by her and the said S. M. Dinkins to said C. W. Rudolph passed to complainants as heirs at law of said Sallie B. Dinkins, and that the equity of redemption which passed to complainants upon the death of their said mother, Sallie B. Dinkins, now resides in complainants, and complainants ought not to be precluded by any of the paper writings executed subsequent to said mortgage, "Exhibit A," or in any other manner should they be prevented and precluded from redeeming said premises of which said H. S. Latham has possessed himself in the manner as herein set forth; that said complainants at the time of said alleged foreclosure, and an exercise of the power of sale contained in said mortgage, were infants of tender years, and the price which said property is alleged to have been sold for at said alleged sale was greatly inadequate and greatly disproportionate to the market value of said property; that if complainants are mistaken in all of their contentions hereinabove set forth relative to the legal operation and effect of said paper writing purporting to be said mortgage, bearing date January 5, 1895, and in their contentions as to the legal operations and effect of the transactions and things purporting to be a foreclosure of said mortgage, and purporting to be a valid exercise of the power of sale contained therein, which is hereinabove referred to, then the complainants allege that on, to wit, the date of said alleged foreclosure of said mortgage, said S. M. Dinkins, hereinabove referred to, was hard pressed for money, and was desirous of obtaining a loan from the respondent, and S. A. Latham, in order to obtain money with which to redeem said property herein mentioned from said mortgage, which said mortgage was about to be foreclosed, and said respondent and S. A. Latham were desirous of making said loan to said Dinkins in an amount sufficient to pay off indebtedness due said Rudolph, which was secured by said mortgage, and at said time said Dinkins did not have the money with which to pay off said indebtedness; that said alleged foreclosure of said mortgage, and alleged sale

thereunder, referred to in paragraph of said bill of complaint beginning with the word "Fourth," and the written instrument executed as evidence thereof and designated as "Exhibit B," and the instrument executed and referred to in paragraph beginning with the word "Fifth" and designed and marked as "Exhibit C," and the written instrument referred to as "Exhibit D," and the execution of said paper writing, was nothing more nor less than an indirect method of making a loan by said Latham and his brother S. A. Latham to said S. M. Dinkins, and an indirect method of causing this property, herein referred to, to be put up as security for said loan; that contemporaneously with the execution of the paper writing referred to as "Exhibit C" there was executed the paper writing referred to as "Exhibit D," and the execution of both of said papers constituted but one transaction, and were given and executed as security for the loan made on that date to the said Dinkins by said Lathams, said loan being in the sum of $2,969.88, which amount was the amount needed by said Dinkins to pay off the indebtedness due said Rudolph at said time; that said paper writing referred to as "Exhibit D" purports to be a lease sale contract, and purports to be given for the lease of the land herein referred to, but which was in truth and in fact, together with the paper writing referred to as "Exhibit C," really intended to secure the debt then due respondent, and were so accepted by respondent, and that same was intended only as a mortgage, and that by said instrument referred to as "Exhibit D" the complainants were also given the right upon certain contingencies to redeem said lands, which was in truth and in fact the equity of redemption, and that said complainants have never been precluded from exercising said right given them of redeeming said lands, and such equity of redemption has never been cut off, and that any rights which were given said Dinkins under and by virtue of aforesaid transactions inured to the benefit of said complainants; and complainants allege that, as a part of said transaction, it was understood and agreed by said respondent and said Latham that said Dinkins was to remain in possession of said lands, and was not to pay any rent for the use and occupation of same, and that said Dinkins did remain in possession of same until, to wit, November 25, 1904, as hereinabove stated under said agreement; and complainants allege that respondent has repudiated said agreement by refusing to deliver or to surrender and deliver to complainants the deeds which they agreed to execute in said "Exhibit D," upon the offer of complainants to pay respondent the proper amount due him, with lawful charges thereon, and in refusing to treat said written instruments hereinabove referred to as a mortgage, notwithstanding there was a parol understanding and agreement by and between the respondent and said Dinkins which was made contemporaneously with and a part of the foregoing transaction, that said transaction and the written instrument executed in pursuance thereof would be treated as a mortgage to secure to respondent and his brother S. A. Latham the amount loaned said Dinkins, and said H. S. Latham is endeavoring to treat said transactions, together with the deed referred to as "Exhibit E," as a deed to him in fee simple of the full title to said property, and not as a mortgage; and complainants allege that at the time of the execution of the above-described papers, and at the time of the filing of this bill of complaint, the reasonable market value of said property was, to wit, $10,000, which was several times greater than the amount loaned said Dinkins, as aforesaid, and that respondent knew at the time such transactions were made that the market value of said property was as aforesaid, and that said transaction grew out of the negotiations of a loan

of money to said Dinkins by said H. S. and S. A. Latham.

Leader & Ewing and Henry Upson Sims, all of Birmingham, for appellants. W. A. Gunter, of Montgomery, for appellee.

THOMAS, J. The purpose of the bill is to have the mortgage in question declared void on the grounds (1) that the husband did not join therein in such manner as to make effectual a conveyance of the wife's real property; (2) that by the attempted foreclosure the power of sale contained therein was never executed by the mortgagee; (3) that the Rudolph deed was an assignment by mortgagee of her interest in the lands, and the agreement of appellee with the husband of the mortgagor-wife created a new right in her minor children, the complainants—a renewal mortgage which has not been foreclosed.

The complainants pray that, if any one of the above aspects of the bill is true, all clouds be removed from the reversioners' interest, and such interest fully established in them; but, on the other hand, if the mortgage is valid and unforeclosed, that they be permitted to exercise the right of redemption.

The complainants are averred to be the only surviving children of Sallie B. Dinkins, who died September 17, 1896, and S. M. Dinkins, who was living at the time of the filing of the bill; it is further averred that complainant Rudolph Dinkins became 21 years of age on May 14, 1912, and that Margaret Dinkins was over the age of 18 years, and under the age of 21 years, but that her disabilities of nonage were removed, and she was given the right to sue and be sued, by a decree of the chancery court rendered March 24, 1913.

The mortgage in question, together with the note securing the same, bearing date January 5, 1895, signed by Sallie B. Dinkins and her husband, S. M. Dinkins, and payable to C. W. Rudolph, has been fully considered by this court. See Dinkins v. Latham, 154 Ala. 90, 45 South. 60; Dinkins v. Latham, 168 Ala. 668, 52 South. 1037. The chancellor did not err in decreeing that it was a conveyance by Sallie B. Dinkins of her therein described real properties. Townley v. Corona Coal & Iron Co., 77 South. 1;[1] Bowles v. Lowery, 181 Ala. 603, 62 South. 107; Sloss-Sheffield Co. v. Lollar, 170 Ala. 239, 54 South. 272; Fite, Porter & Co. v. Kennamer, 90 Ala. 470, 7 South. 920; Madden v. Floyd, 69 Ala. 221; Hammond, Adm'r, v. Thompson, 56 Ala. 589.

In the case of Johnson v. Goff, 116 Ala. 648, 650, 22 South. 995, Judge Brickell qualified his statement of the effect of former decisions of this court touching a conveyance by the limitation, "when there is nothing in the deed to indicate an intention on their part to become grantors."

To appellants' invitation that we overrule

[1] 200 Ala. 627.

the former decisions in the Dinkins-Latham Cases, we will say that this court does not see fit to reopen the discussion of the sufficiency of the execution of this mortgage by the wife, deeming the former ruling to be consonant with the settled law of this jurisdiction.

We must next inquire whether there was a valid foreclosure of this mortgage, and consider, as pertinent to this inquiry, the burden of proof in such cases. Mr. Jones (Mortgages, 6th Ed., vol. 2, §§ 1830 et seq.) writes that:

"When the validity of a sale under a power is questioned on the ground that the advertisement of the sale was not made in pursuance of the deed, the better opinion is that in an action at law it will be presumed, after the execution of a deed under the power of sale to the purchaser, that all the terms of the power and all requirements as to notice have been complied with. Certainly, in an action of ejectment by the purchaser against the grantor or other person in possession, no evidence aside from the deed to such purchaser and the recitals in it is necessary to show title and right of possession in the plaintiff. It would seem, moreover, that the defendant would not be permitted to prove that notice of sale was not given under the power, because the deed would confer upon the purchaser the legal title to the land. * * * On a bill to set aside a sale on the ground that the notice of sale was defective, and was published in an obscure paper, the burden of proving these defects rests with the complainant. Tartt v. Clayton, 109 Ill. 579. It is presumed that the terms and conditions of the deed of trust or mortgage were complied with and notice of sale properly given; though this presumption, arising from the deed under the power and its record, may be rebutted in equity by proof to the contrary." Burke v. Adair, 23 W. Va. 139.

And this author cites two cases in equity, where the burden of proving a proper foreclosure was held to rest upon the purchaser or other party insisting upon the validity of the sale. Wood v. Lake, 62 Ala. 489; Gibson v. Jones, 5 Leigh (Va.) 370; 2 Jones on Mortg. (6th Ed.) § 1830.

Reference to Wood v. Lake, supra, shows an action in the nature of ejectment, where the plaintiff claimed title through a sale and conveyance by a trustee named in a trust deed, which recited an indebtedness and provided for a sale on default. The trustee's deed merely recited that—

"after giving said notice in accordance with the terms of said deed of trust (said debt not having been paid by the grantor in said deed of trust at the maturity thereof nor subsequently, and the whole amount thereof remaining due, with interest thereon), I did, on the 2d day of May, A. D. one thousand eight hundred and seventy, within the legal hours of sale, at Waynesboro, Wayne county, state of Mississippi, at the courthouse door in said town, offer said lands at public outcry to the highest bidder for cash," etc.

Judge Stone said:

"The record contains no evidence of the time, place, and terms of sale, nor of the giving of the required notice, unless the recitals copied above be evidence of those facts. It will be observed that the sale was made by Houston under a naked power. The general rule is that one not the owner, who sells another's lands, must comply substantially with all the directions, stipulations, and conditions expressed in

the power, or the title will not pass. Sugden on Powers, 212. 'If notice is required to be given, the execution of the power will be void if notice be not given accordingly.' The recitals in a deed or mortgage are said to operate an estoppel against the parties to it. They do not and cannot estop strangers, for strangers have nothing to do with the draft, execution, or acceptance of them. They are res inter alios acta, and are evidence only against the parties and their privies. * * * There was no proof in the present case that the notice required by the mortgage was given. Whether this is fatal to plaintiff's suit, or whether this is a mere informality in the execution of the power in the mortgage which the parties to it may waive, and which strangers will not be heard to object to, we need not decide. See Foster v. Goree, 5 Ala. 424." Sanders v. Askew, 79 Ala. 433.

In Robinson v. Cahalan, 91 Ala. 479, 8 South. 415, where the action was in the nature of ejectment, the Chief Justice again considered the question, as follows:

"The bill of exceptions fails to show that the sale was advertised, whether it was a public or private sale, by whom it was made, or the price at which the land was purchased. *And the deed neither avers nor recites either of these things.* [Italics supplied.] The record is fatally defective in not showing enough to make the alleged sale a valid foreclosure of the mortgage. Wood v. Lake, 62 Ala. 489. Possibly this proof could have been supplied, but it is not in the record. We feel constrained to hold that, as a purchaser at a foreclosure sale, Cahalan has failed to make out his case."

Later, in a bill in equity by a mortgagor for redemption, where the question of primary importance was what weight should be given the recitals of a foreclosure deed. the question was again considered, and it was there held that the provisions of the mortgage were complied with, as to notice of time when, place where, and terms of sale. The court said:

"Appellee contends, and we presume that was the conclusion of the learned chancellor that, under the influence of Wood v. Lake, these recitals are, as to the mortgagor, res inter alios acta, and must not be given any consideration. There are some expressions in the opinion which seem to justify the contention. An examination of the case, however, will show that no importance was attached to these statements in reaching a decision. * * * We must presume the recitals are prima facie true against the mortgagor, the *grantor of the power and his privies.* [Italics supplied.] * * * The recitals are only prima facie evidence as to the existence of the facts stated, but are not conclusive." Naugher v. Sparks, 110 Ala. 572, 575, 576, 18 South. 45; Robinson v. Pierce, 118 Ala. 273, 297, 24 South. 984, 45 L. R. A. 66, 72 Am. St. Rep. 160; Leech v. Karthaus, 141 Ala. 509, 514, 37 South. 696.

And in Harton v. Little, 176 Ala. 267, 57 South. 851, where the bill was filed to enforce a trust against land, Mr. Justice Somerville said of the presumption of foreclosure:

"The recitals of this deed are full, and amply show, prima facie, a valid foreclosure of the mortgage by the transferee and owner of the debt which it secured. Naugher v. Sparks, 110 Ala. 572, 18 South. 45. Moreover, regularity and validity are presumed in the absence of evidence to the contrary. Ward v. Ward, 108 Ala. 278, 19 South. 354."

[1] It is now the settled law of this state, whether invoked in a suit at law or in equity, that a deed to the purchaser at a foreclosure sale, containing recitals showing full compliance with the terms prescribed by the mortgage, is prima facie evidence of the facts stated therein, and that such recitals are sufficient to establish the fact of foreclosure and the validity of the same, as against the mortgagor and his privies in title, in the absence of evidence to show that the recitals are untrue. Naugher v. Sparks, supra; Hughes v. Rose, 163 Ala. 368, 50 South. 899; Smith v. Steiner, 172 Ala. 79, 55 South. 606; Clark v. Johnson, 155 Ala. 648, 47 South. 82; Jackson v. Tribble, 156 Ala. 480, 47 South. 310. The term "privity" or "privies," as here used, means mutual or successive relationship to the same right of property; for example, the executor is in privity with the testator, the heir with the ancestor, the assignee with the assignor, the donee with the donor, and the lessee with the lessor. McDonald & Co. v. Gregory, 41 Iowa, 513, 516; Coke Litt. 241a, 242a; Whittingham's Case, 4 Coke's Rep. (pt. 8) p. 42.

The case of Speakman v. Vest, 166 Ala. 235, 51 South. 980, is not to the contrary. The question there considered was whether the personal property involved was seized and sold without complying with the terms of sale; and it was held that the evidence introduced without objection by the attorney in fact who represented the mortgagee, in foreclosing the mortgage, tended to show that notice of sale was given as required by the mortgage, and that as to the fact of foreclosure a jury question was presented.

[2] A reference to respondent's answer will show that no affirmative relief is sought thereby. The general rule obtaining in such cases is that the burden remains with the complainant to prove the material allegations of his bill. Such is the rule even where the right to relief is grounded on negative averments, and the pleader is required to establish the truth of such averments, unless the subject-matter thereof lies peculiarly within the knowledge of the other party. City of Mobile et al. v. Chapman, post, p. 194, 79 South. 566; Robinson v. Griffin, 173 Ala. 372, 56 South. 124; Freeman v. Blount, 172 Ala. 655, 55 South. 293.

[3] So much for the burden of proof of the fact of foreclosure, and its discharge by the mortgagee or his privies in title, and as to the prima facie evidence of the validity of the foreclosure's inhering in recitals in the deed to the purchaser at a foreclosure sale. The foregoing rule of evidence obtains as to such a deed, whether made by the mortgagee, by his attorney in fact, or by an auctioneer executing or purporting to execute the power of sale provided in the mortgage.

The last material amendment of the bill, which was contained in paragraph 7 thereof (by change of paragraph A10), states complainants' contentions to the effect (1) that

the Rudolph deed to Latham was but an assignment of the mortgage from Sallie B. Dinkins to C. W. Rudolph, and of Mrs. Rudolph's interest in the land, when considered with the concurrent agreement of appellees and S. M. Dinkins, and was in legal effect a renewal of the mortgage, which has not' been foreclosed, and from it complainants are entitled, and they seek, to redeem; (2) that the transactions in question, and the paper writings executed in pursuance thereof, constituted a fraud upon complainants, remaindermen, as to their interest in said lands, by the parties so charged with this fraud. The reporter will set out this amendment.

Was there a valid foreclosure of the Rudolph mortgage? Mr. De Lemos' testimony tended to show that as attorney he proceeded to a regular foreclosure of the mortgage under the power of sale contained therein, and that he had his authority for such foreclosure from Mr. S. M. Dinkins, the father of complainants; that he did not remember seeing the mortgagee at the sale, but that Mrs. Rudolph or some one for her bid in the property for the amount of the mortgage debt. On cross-examination the witness stated that he made the deed immediately after the sale to the purchaser, when what had occurred at the sale was of recent memory, and that to his best recollection he correctly stated the facts in his deed to the purchaser; that either Mrs. Rudolph' was present, or some one purporting to act for her, and bid in the lands, and that he accordingly made the deed to her as the purchaser at the foreclosure sale.

As a witness for complainants, Mrs. Rudolph testified that she had never spoken to De Lemos about foreclosing the mortgage, had never told him to foreclose it, and "did not know who authorized him to foreclose this mortgage." It is to be observed that this statement does not amount to a denial that she authorized any one to foreclose the mortgage for her as the owner thereof and the mortgagee named therein. On cross-examination she admitted having been paid the money evidenced by the mortgage, that this was effectuated by Mr. S. M. Dinkins, her brother-in-law, and that she executed a deed to Latham to the lands purported to be conveyed by the De Lemos foreclosure deed and her Dinkins mortgage. The witness' indistinct recollection of these transactions, which occurred in the latter part of 1900, is illustrated by her testimony that she went down to Mr. Dinkins' office in Montgomery, signed a paper, and had a "very slight recollection of that paper, or of the transaction at all"; that she did not know whether Dinkins or some one else paid her. the money evidenced by the mortgage, or whether it was at the time she signed the deed to Latham; did not know whether the payment to her was in money or by check; did not know that the calculation made by some one represented the amount due her on her sister's

mortgage, and that she did not make the calculation of the amount due thereon, her statement concluding with the admission, "I just took what was given me."

The deed by De Lemos as auctioneer to Mrs. C. W. Rudolph contains a recital of the existence of contract provisions in the mortgage for sale on default, giving their tenor, and of the fact that default was made in the payments thereon; that "De Lemos was employed by the said C. W. Rudolph to make said sale"; that the foreclosure sale was made according to the contract provisions of the mortgage; and that—

"at said sale the said C. W. Rudolph, being the purchaser of the land at and for the price of two thousand seven hundred and eighty ($2,780) dollars, being the highest and best bidder therefor at said price above named, now, I, Ben De Lemos, being authorized as aforesaid and by virtue of and in execution of the power contained in said mortgage, in consideration of the said sum of two thousand seven hundred and eighty dollars, the amount so bid and to me in hand [paid] by the said C. W. Rudolph, the receipt whereof is hereby acknowledged, I do hereby grant, bargain, sell, and convey unto the said C. W. Rudolph, her heirs and assigns, the following described property embraced in said mortgage," etc.

There is no material discrepancy between De Lemos's testimony and the recitals contained in his deed as auctioneer to Mrs. Rudolph (other than in the recital, "Whereas, Ben De Lemos was employed by the said C. W. Rudolph to make said sale"), and his testimony that Mr. S. M. Dinkins requested him to advertise and be auctioneer at a foreclosure sale under the mortgage in question, "and sell it for him"—meaning the lands embraced therein. The witness testifies, however, that to the best of his recollection he correctly stated the facts in the deed that he made as auctioneer to Mrs. Rudolph.

As further tending to show that Mrs. Rudolph had authorized, or was aware of, the foreclosure of the mortgage on the sister's lands, on January 26, 1901, she made a deed to the lands to the Lathams, in which the recited consideration was $2,969.88, together with the written agreement between Latham and Dinkins by which Latham extended for Dinkins the right to redeem or repurchase said lands "from the mortgage sale of the same by the undersigned," and in which the lands were described as being known as the "Dinkins Place," and as being subject to the right of redemption by the heirs and representatives of Sallie B. Dinkins as extended by said agreement. Thus was Mrs. Rudolph's foreclosure of her sister's mortgage on November 15, 1900, recited in her solemn conveyance to the Lathams, and in the agreement between Latham and S. M. Dinkins, to which she referred in her deed to the Lathams.

This contract between the Lathams and Dinkins recited that the Lathams had bought the lands of Mrs. Rudolph for the named consideration; that said sum was "the

amount required on this date, January 26, 1901, to redeem said lands under a foreclosure sale by the said C. W. Rudolph on November 15, 1900"; that the said Lathams would allow "the heirs or personal representatives" of Sallie B. Dinkins, deceased, until January 1, 1905, "to redeem said land"; and that the sale was made subject to the right of redemption.

[4] Without other evidence, a prima facie case of foreclosure of the mortgage by Mrs. Rudolph is shown, together with the fact that she was the purchaser at such sale (as under the conditions named in the mortgage she was permitted to become), and the further fact of a resale of the lands to the Lathams subject to the statutory right of redemption, or to the extension thereof as per terms of agreement. This, however, is not the only evidence of the valid foreclosure of her mortgage by Mrs. Rudolph that is contained in the record. The respondent, H. S. Latham, testified that when they purchased the lands of her, she told them that she foreclosed the mortgage in order to get her money, and that she "wanted the money and not the land"; that she gave witness De Lemos' auctioneer's deed, and the (Sallie B.) Dinkins mortgage, consenting that witness might carry said instruments away with him. This, presumably, was for Latham's investigation and the preparation of a proper or satisfactory conveyance of the lands by Mrs. Rudolph to the Lathams. This witness further testified that Mrs. Rudolph stipulated that the deed by her to the Lathams should be deposited with the Farley National Bank for delivery on the payment of the purchase price and that the consummated purchase, with delivery of the deed, was so concluded through said bank. Mr. S. A. Latham corroborates this statement that Mrs. Rudolph said to them, while negotiating the sale to them, that she wanted her money out of the land and did not want the land.

[5] Concerning the allegations of fraud, contained in the bill as amended, it is hardly necessary to observe that the burden of proof rested on complainants to sustain the same, and this burden the complainants have not discharged. Bradstreet v. Neptune, 3 Sumn. 601, Fed. Cas. No. 1793; Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914; Reynolds v. Stockton, 140 U. S. 254, 11 Sup. Ct. 773, 35 L. Ed. 464.

In Floyd v. Ritter's Adm'r, 56 Ala. 356, touching the allegation of fraud and the proof necessary to support the same, the Chief Justice observed:

"It is not enough that the proofs show that the plaintiff is entitled to relief—that he has a just and meritorious demand, which lies within the jurisdiction of the court to enforce; they must show he has the demand preferred in the bill, and is entitled to relief on the ground therein stated." Craige v. Craige, 41 N. C. 191; Gilmer v. Wallace, 75 Ala. 220; Webb v. Crawford, 77 Ala. 440, 442; McDonald v. Walker,

95 Ala. 172, 10 South. 225; Equitable Mortg. Co. v. Finley, 133 Ala. 575, 31 South. 985.

After a careful consideration of this evidence, we are satisfied there was a lawful foreclosure under the power of sale contained in the mortgage given by Mrs. Sallie B. Dinkins and husband to Mrs. C. W. Rudolph, and that thereafter the right of exemption existing in S. M. Dinkins and complainants was not exercised within the period of its duration.

[6] In a valid foreclosure sale under the powers contained in a mortgage, there is no field for the operation of the doctrine of disaffirmance by a minor affected thereby, and redemption must be effected within the period provided by statute. Sloan v. Frothingham, 65 Ala. 593; Waldrop v. Friedman, 90 Ala. 157, 7 South. 510, 24 Am. St. Rep. 775; Summerford v. Hammond, 187 Ala. 244, 245, 65 South. 831. The foreclosure on November 15, 1900, of the Rudolph mortgage, being a valid exercise of the power of sale contained in the instrument (that right being a part of the security, Sloan v. Frothingham, 65 Ala. 593, 598), and no redemption therefrom having been effectuated, it is unnecessary that we proceed to a discussion of the time within which a minor, after attaining majority or after the removal of his disabilities of nonage, may assert a claim against one who rests his title to lands upon a void foreclosure deed. Mewburn's Heirs v. Bass. 82 Ala. 622, 2 South. 520; Alexander v. Hill, 88 Ala. 487, 7 South. 283, 16 Am. St. Rep. 55; Lovelace v. Hutchinson, 106 Ala. 417, 424, 17 South. 623; Dozier v. Farrior, 187 Ala. 181, 65 South. 364.

[7] The fact that the amount bid at the foreclosure sale—the amount due on the mortgage to that date—was less than, or disproportionate to, the value of the lands sold, or that the lands were susceptible of division, and the probability that if the same had been sold in parcels such sales would have yielded the amount due on the mortgage before the sale of the whole plat, cannot avail complainants in the relief sought.

[8] Though it has been held, touching defendants in chancery who are not sui juris and whose lands are susceptible of division, and whose title will be affected by a sale thereof, that it is error to decree a sale without first ascertaining whether or not the interest of such person under disability will be probably promoted by a sale in parcels (Homer v. Schonfeld, 84 Ala. 313, 4 South. 105; Gladden v. Mortgage Co., 80 Ala. 270; Boyle v. Williams, 72 Ala. 351; Eslava v. Lepretre, 21 Ala. 504, 56 Am. Dec. 266; Ticknor v. Leavens' Ex'r, 2 Ala. 149; Mills v. Dennis, 3 Johns. Ch. [N. Y.] 367), this rule has no application to a sale by a mortgagee in the exercise of rights and powers contained in the mortgage. The power of sale, being a part of the security, may be exercised by the mortgagee pursuant to the terms,

though hardship result to those whose title is subject to the mortgage.

Appellants' counsel virtually admit the nonapplicability of the rule discussed to the instant facts. The decree of the chancery court to like effect, dismissing complainants' bill, is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.